law and of the arguments thereon.   We cannot discover any evidence that would justify our finding facts or reaching conclusions that would result in a decree against the defendant.

The court dismissed the bill.   Plaintiff appealed.

*Error assigned,* among others, was the decree of the court.

*M. H. Stevenson,* for appellant.

*George C. Bradshaw,* of *Thompson & Bradshaw,* for appellee.

PER CURIAM, January 3, 1916:

The learned chancellor below committed no error in finding that the appellee had fully accounted for all moneys and property for which he was responsible. This is all that need be said on the contention of counsel for appellant that a master ought to have been appointed.   The appeal is dismissed and the decree affirmed at appellant's costs on the opinion of the court below dismissing the exceptions to findings of fact and conclusions of law.

---

## Pivirotto's Estate.

*Decedents' estates—Claim of wife—Evidence—Venal witnesses —Estoppel—Dismissal of claim.*

An executor's account included, as part of decedent's property, a business described as the Italo-French Produce Company.   It appeared at the audit that decedent had failed in the liquor business, and had thereafter carried on the business of the produce company in his wife's name, as manager for her;   there was evidence that after effecting settlement with his creditors, the produce business was conveyed to decedent by his wife, and was thereafter conducted by him individually until his death;   that decedent and his

.wife had separated under an agreement which provided that the business of the Italo-French Produce Company should be conducted by decedent without interference by the wife. The wife claimed the property of the produce company as hers alleging that the business had never been conveyed by her to her husband and produced the testimony of her children as to declarations and admissions by the decedent and by a witness in decedent's employ, who had been convicted of embezzlement. The witnesses produced by claimant had previously testified in a proceeding to set aside testator's will that the Italo-French Produce Company was the property of decedent; it further appeared that such witnesses were interested in procuring the allowance of the claim. The auditing judge found that claimant's witnesses were unworthy of credence, and that she had estopped herself from claiming the business of decedent, by joining in the proceeding to set aside the will, wherein it was alleged that the business was his property, and disallowed the claim. *Held*, the court did not err in dismissing exceptions to the adjudication.

Argued Oct. 14, 1915. Appeal, No. 130, Oct. T., 1915, by Augustina Pivirotto, from decree of O. C. Allegheny Co., Sept. T., 1914, No. 108, dismissing exceptions to adjudication, in Estate of Felice Graziano Pivirotto, Deceased. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Exceptions to adjudication.

The adjudication of TRIMBLE, J., was as follows:

Felice Graziano Pivirotto, died on the 8th day of May, 1913, testate. By his will dated June 24, 1912, he directed that the business known by the name of the Italo-French Produce Company, should be disposed of according to the judgment of his heirs, "either to be sold or to be kept up," disinherited his wife because he had "already well provided for her as per agreement of separation signed on December 2, 1911," bequeathed illusory legacies to four of his children, ten thousand dollars in merchandise to a faithful employee, and five thousand dollars to his sister. The remainder of his estate was bequeathed and devised to his son Arturo Pivirotto, and his nephew Gast Teyssier, one-half to

each. Gast Teyssier, was appointed testamentary guardian of Arturo Pivirotto, and executor of the will. The will was probated, and on the 5th day of December, 1913, an inventory of the estate was filed showing assets of $116,405.72.

The four children who received the unsubstantial legacies, petitioned the Orphans' Court for an issue devisavit vel non. After the pleadings were perfected, the parties had several hearings, and on February 9, 1914, the contestants and Gast Teyssier, legatee, with the consent of the · Orphans' Court, settled the contest, Gast Teyssier paying to the petitioners $16,000.00 from his own estate.

Agustina Pivirotto, the widow of the decedent, and claimant here, was active in aiding the contestants in the preparation of their case for trial.

The executor filed his account on June 11, 1914, amended it on September 22, 1914, and again at the audit, both times with the permission of the court. On September 23, 1914, the claimant made a legal demand for the property of the Italo-French Produce Company, all of which was included in the account. Exceptions were filed by the widow, Agustina Pivirotto, in her own behalf, and as the natural guardian and next friend of her son Arturo Pivirotto, for whom the executor is testamentary guardian. These exceptions were properly filed to the account which was first filed, and renewed each time it was amended. The exceptions of Mrs. Pivirotto challenge the right of ownership to the assets included in the account, and allege that they belong to her.

At the audit when the exceptions were heard, the following facts were developed:

The decedent was at one time, many years ago, engaged in the liquor business, in the City of Pittsburgh, and was sold out at sheriff's sale, the proceeds being insufficient for the payment of all his debts. He and his wife, the claimant, were industrious, and with her assist-

ance he established a macaroni, produce and grocery business. A part of this business was conducted while he was a licensee for the sale of liquors, but after his failure he devoted all of his time and attention to the increase of his macaroni, produce and grocery business, and borrowed money from his friends which was used in enlarging it. This borrowed money, together with the accumulation of profits from the business, and reinvestment of the same, was the foundation of what in after years became a large and prosperous business concern in the City of Pittsburgh.

After his failure the business was conducted under the names of "Mrs. G. A. Pivirotto," "G. Pivirotto," and the "Italo-French Produce Company." The pretense was that he was conducting it as manager for his wife, so as to evade the payment of judgments which had been entered against him, resulting from his experience as a tavern keeper.

Real estate was purchased from the profits of the business, and the title thereto was taken and held in the name of the claimant. On October 14 and 17, 1907, the decedent effected a settlement with his judgment creditors. The real estate where the business was conducted, in Allegheny, now Pittsburgh, was conveyed to the decedent on the 4th day of May, 1908; new buildings were contracted for and erected in 1910 and 1911, and paid for by the decedent, out of the funds of the Italo-French Produce Company, and these buildings and all of their contents were insured by the decedent, and the insurance paid in the same manner. From the time the real estate in which the business was conducted was conveyed to him by his wife, all of the business which had formerly been transacted under the name of his wife, was thereafter, until his death, conducted by him individually, under the name of the Italo-French Produce Company, and from the date upon which the change in name was effected, until his death, the claimant exercised no rights or duties as owner.

She claims that the title to the assets of the Italo-French Produce Company has always been in her, and that she never transferred them to any person; that because the business had grown from a small concern, which she could easily handle, to over half a million dollars annually, and being illiterate, she permitted her husband to operate it as manager for her. That he was a prosperous business man is admitted. A disagreement arose between him and his wife about his oldest son, and the consequence was an estrangement between him and all of his family, except his youngest child Arturo.

In September, 1911, the decedent threatened to file a libel in divorce against his wife, and on the 2d of December, 1911, their married life reached its climax in a separation agreement, in writing, wherein a division of the estate held by each was made. All of the land which was in Mrs. Pivirotto's name at the time of the separation agreement was bought and paid for out of the funds of the Italo-French Produce Company. The settlement between them was fair; all of his estate was revealed to her, and in fixing the value of the share which each one received, the Italo-French Produce Company was appraised and made a part of the valuation. The total value of the share received by the claimant was $43,-000.00, and the share of the decedent did not exceed $47,000.00, and this included the Italo-French Produce Company. Two of the covenants of the separation agreement are, that he will "permit her......to follow and carry on such trade or business as she may from time to time choose," and that she will "permit him ......to follow and carry on such trade or business as he may from time to time choose, without any interference from her." The decedent was at that time carrying on the Italo-French Produce Company in his own name, and continued to do so until his death.

The separation agreement provided for the payment of mortgages on real estate vested in her, and also some cash. In order to discharge his liability on his cove-

nants of the separation agreement, the decedent paid all
of these sums out of the funds of the Italo-French Pro-
duce Company. Two of these checks which paid his liability were drawn to Mrs. Pivirotto's order, and were
endorsed by her, with her mark, duly attested, and delivered by her to her son, who was her trustee, and who
was with her when the settlement was made and money
paid, to explain everything. One of the deeds delivered
to her by her husband in carrying out the terms of this
agreement, contains this recital: "This deed being made
in order to explain the difference in names, and also to
avoid confusion of names, due to the fact that F. G.
Pivirotto is now doing business as F. G. Pivirotto, doing
business as Italo-French Produce Company."

In February, 1912, the claimant had the decedent
arrested for the nonsupport of his minor children, and
caused testimony to be introduced at the hearing in the
County Court of this county, showing that the decedent
was rated financially, inter alia, by his business, which
was the Italo-French Produce Company.

On February 19, 1913, she filed an affidavit of defense, to an action brought against her and her husband,
on the warranty in a deed dated April 11, 1906, executed
and delivered by both of them, conveying land to the
plaintiff, in which she alleged "that whatever matters
took place in connection with the sale, purchase and
resale of the property mentioned in the affidavit of
claim, were matters connected with the business of her
husband Felice G. Pivirotto, and she only acted as agent
or trustee for him in said matters."

She aided her children in the contest of her husband's
will, and did not assert ownership of any part of the decedent's estate for more than seven months after the
contest was settled, although the business which she
now claims as her own was bequeathed by that will. To
aid in this contest, she petitioned the Orphans' Court
for the appointment of a guardian for her daughter, and
alleged that the decedent's estate was worth much more

than $100,000.00; she knew his real estate, and that its value was less than that sum, and when she represented to the court the value of his estate, she included therein the Italo-French Produce Company.

From the above statement of facts, it is not difficult to arrive at a conclusion as to the ownership of the Italo-French Produce Company, or any other business which was conducted by either the decedent or his wife from the time it was started, until the early part of the year 1908. When the decedent conducted his business in the name of the claimant, and concealed real estate in her name, which had been purchased by funds taken from the business, the transactions were void as to creditors, but good between the parties. On the 4th of May, 1908, Mrs. Pivirotto conveyed to her husband the land where the Italo-French Produce Company was conducting the business, and on the 27th of October, 1908, the bank account was changed by striking off the word "Manager." From the time when the land was transferred to the decedent and the account in the bank changed from himself as "Manager," and thereafter conducted by him individually, the claimant can show no act of ownership, either express or implied, except by her own children, who testify to declarations and admissions of the decedent, and by one other witness, who was prosecuted and convicted at the instance of the decedent, for embezzlement.

If we could give any credence to the testimony which was offered, an issue would be raised; but their credibility is destroyed chiefly by their own testimony, given by them in the contest of their father's will, wherein they asserted that this Italo-French Produce Company belonged to the decedent, because it was the subject of a legacy in the will, which they were contesting. By claiming it from him they admitted that it was his, which they cannot now contradict, without the loss of their credibility.

The admitted venality of the claimant's son, who

was her chief witness, destroyed his credibility, for the seduction and fraud, and the perjury which he committed, either when he claimed his father's estate as his own, or when he aids his mother in claiming it as hers were all committed by him brazenly, and shows that depravity is the source from which his testimony springs.

The interests of these witnesses too, in having this estate taken away from their brother Arturo, and passed to the mother, wherein they would possibly share hereafter, is another reason why the claimant cannot be permitted to recover on their testimony.

Nor is the testimony of Conti to be relied upon; his manifest determination to have vengeance for his conviction which was caused by the decedent, was such that in view of the overwhelming testimony against the theory of the claimant, could not be the basis of a just decree.

The postnuptial contract, and the performance of its covenants alone, discharged all liability of the decedent to his wife, and confirmed absolutely the title to the assets of the Italo-French Produce Company in him. She agreed to permit him to carry on his business to his liking; he was then carrying on the Italo-French Produce Company, and paid her what cash was coming to her, and the mortgages on the properties which she either had, or were conveyed to her, from the funds of the Italo-French Produce Company. If this company or business belonged to her, she should have protested that the money which he gave her, by the checks of the Italo-French Produce Company, was hers, and not his; but she took it without objection, or assertion of ownership, and thereby admitted that it belonged to him. And in addition to that admission of ownership, she precluded all possible doubt about her belief in her husband's ownership, when she accepted a deed from him in settlement, which recites that "F. G. Pivirotto is now doing business as F. G. Pivirotto, doing business as Italo-French Produce Company." This postnuptial

agreement, and the acceptance of that deed, are conclusive proof of her release of dower, and any and all interest which she had in his business, and she cannot now claim this against the provisions of the decedent's will.

Moreover, when she prosecuted him for nonsupport of his children, after she had settled with him by the postnuptial contract, she produced evidence to the court that he owned the Italo-French Produce Company, in order that the court could determine the amount of his liability for the support of his children.

Again, when she defended an action brought against her on the warranty in her deed in February, 1913, after the separation agreement was signed, and in this defense asserted an agency for her husband "in his business," knowing that his business was then that which she now claims is hers, her admission silences her claim for this business.

Finally she estopped herself from claiming this business of the decedent. It is beyond any doubt that she aided her four children in the contest of her husband's will; this forbids any other claim by her. If she owned the property she should not have aided the children in representing to the court that the decedent owned it; she should then have asserted that the business known as the Italo-French Produce Company, which was bequeathed by the will, belonged to her.

Gast Teyssier was one of the legatees of this business, and a devisee of one-half of testator's property, after the deduction of some minor legacies, and she allowed him to pay from his own estate sixteen thousand dollars to her children, to settle that will contest.

It is equity that "where actions or words lead others to believe in the existence of certain facts, the party inducing such belief will not be permitted to allege the contrary of the facts for which he has vouched"; Bispham's Principles of Equity, 8th Edition, Sec. 287, page 443.

The claim is dismissed.

The court dismissed the exceptions. Augustina Pivirotto appealed.

*Errors assigned* were rulings on evidence and in dismissing the exceptions.

*H. D. Montgomery,* with him *George E. Reynolds,* for appellant.

*F. C. McGirr,* with him *Thomas M. Marshall, Jr.,* for appellee.

PER CURIAM, January 3, 1916:

We have not been convinced that any reversible error was committed in the taking of the testimony in this case, and, under it, the claim of the appellant was properly disallowed. The decree is, therefore, affirmed at her costs.

---

# Duquesne Light Company, Appellant, *v.* City of Pittsburgh.

*Municipalities—Electric companies—Overhead poles and wires —Right of municipality to require removal—Ordinances—Title—. Construction—Equity—Injunction—Dismissal of bill.*

1. Ordinances adopted pursuant to statutory authority, requiring overhead wires and electric conductors to be removed and placed underground, are a proper exercise of the police power.

2. The title and preamble of an ordinance are parts thereof as they are of a statute.

3. In a suit in equity to enjoin a municipality from enforcing an ordinance which required public service corporations for furnishing electric light, heat or power, or for operating telegraph or telephone lines, to construct conduits and to complete the same before the work of completing the improvements on certain streets were completed, and to remove overhead poles or wires and place the same underground, and which provided that where the city had any of its lines upon such poles the companies owning said poles should first remove their own wires therefrom and place the same