439 A.2d 1149

ASSOCIATED HOSPITAL SERVICE OF PHILADELPHIA,

v.

Alan PUSTILNIK, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1981.

Decided Dec. 24, 1981.

222

Raymond T. Cullen, Thomas A. Schneider, Philadelphia, for appellee.

Barry J. Goldstein, Malcolm H. Waldron, Jr., Stephen M. Feldman, Philadelphia, for appellant.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from an order of the Superior Court awarding appellee Associated Hospital Service of Pennsylvania (Blue Cross) the full amount of Blue Cross credits to appellant Alan Pustilnik's hospital bills, $18,960.18, less a reasonable attorney's fee, in satisfaction of appellee's claim as subrogee upon the proceeds of a $235,000 settlement between appellant and a third-party tortfeasor. We hold that appellee Blue Cross's recovery as subrogee must be limited to the amount actually paid by Blue Cross on behalf

of appellant, less a reasonable attorney's fee. Accordingly, we vacate the order of the Superior Court and remand for proceedings consistent with this opinion.

The relevant facts are not in dispute. On May 27, 1968, appellant was seriously injured when he was struck by a Southeastern Pennsylvania Transportation Authority (SEPTA) subway car in Philadelphia. Appellant required three separate periods of hospitalization, resulting in medical bills of $30,200.87, against which appellant received a credit of $18,960.18 pursuant to the terms of his subscription agreement with Blue Cross. Included in this subscription agreement was a provision setting forth the right of Blue Cross to subrogation against any recovery for his injuries which appellant might obtain from a third party.

Shortly after the accident, appellant instituted suit against SEPTA, claiming $500,000 in damages, including all medical expenses. While the suit was pending, Blue Cross notified appellant and his attorney of its subrogation interest and invited appellant's attorney to represent its interest in the suit. However, no agreement as to an appropriate attorney's fee could be reached. Blue Cross did not seek other representation, but continued to advise appellant's attorney of the increase in its subrogation interest resulting from appellant's second and third hospital stays.

On the fifth day of trial, before a verdict was returned, appellant settled his suit against SEPTA for $235,000. Upon learning of the settlement, Blue Cross immediately notified SEPTA and the trial judge of its subrogation claim. When appellant and Blue Cross were unable to agree on the amount of Blue Cross's subrogation interest, the trial judge place $30,000 of the settlement proceeds into an escrow fund. Blue Cross subsequently brought an action in equity to obtain an adjudication of the sum to which it was entitled as subrogee.

In November, 1975, trial was held in the Court of Common Pleas of Philadelphia. The trial court ruled that Blue Cross was entitled to recover the amount it had spent on appellant's behalf but found that it had not proved that it had

paid the full $18,960.18 which had been credited to appellant's hospital bills. Applying a formula based on Blue Cross's average daily payment per patient at each of the hospitals at which appellant was a patient, the court determined that Blue Cross had paid $16,721.64 on appellant's behalf. The court then reduced this figure by 50% to represent Blue Cross's proportionate share of appellant's recovery of only one-half the full "value" of his claim of $500,000. The resulting figure was reduced by another 40% to reflect Blue Cross's payment of a reasonable attorney's fee to appellant's attorney. Finally, the court deducted $120.00 from the remaining amount as Blue Cross's proportionate share of the litigation expenses incurred by appellant's attorney in prosecuting the suit. Judgment was thus entered for appellee Blue Cross in the amount of $4,889.49.

Both parties filed exceptions to the adjudication which were dismissed. After hearing consolidated cross appeals, the Superior Court set aside the judgment and held that Blue Cross was entitled to recover the full $18,960.18 which it had credited to appellant's hospital bills, reduced only by a 40% attorney's fee and a proportionate share of litigation expenses. 262 Pa.Super. 600, 396 A.2d 1332 (1979). This Court granted allowance of appeal.

On this appeal, appellant contends that the Superior Court erred in failing to limit Blue Cross's recovery to the amount Blue Cross can prove it actually paid on appellant's behalf rather than the amount credited by Blue Cross to appellant's hospital bills.[1] Blue Cross argues that the Superior Court correctly found appellant to be estopped from claiming that Blue Cross is entitled to less than the amount credited to appellant's hospital bills and that, in any event, it is impossible for Blue Cross to determine what it actually paid on appellant's behalf.

1. Appellant also claims that the Superior Court erred in refusing to reduce Blue Cross's recovery by 50% to reflect the "doubtfulness" of appellant's claim against SEPTA, as the trial court had done. This contention was properly rejected as meritless by the Superior Court, see *Illinois Automobile Insurance Exchange v. Braun*, 280 Pa. 550, 124 A. 691 (1924), and does not warrant further discussion.

■ It is settled that the right of subrogation exists only to the extent of actual payment of the subrogee. *Miller v. Myers*, 300 Pa. 192, 150 A. 588 (1930). See also *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414 (1962). See generally 73 Am.Jur.2d Subrogation § 115. Notwithstanding this sound equitable principle, the Superior Court awarded Blue Cross the face value of its credits to appellant's hospital bills on the theory that, because appellant included the full amount of his Blue Cross credits as claimed damages in his suit against SEPTA, he is estopped from denying that he owes that amount to Blue Cross as subrogee. In support of its result, the Superior Court cited Restatement of Restitution § 162 (1937), which provides:

"Where property of one person is used in discharging an obligation owed by another, . . . under such circumstances that the other would be unjustly enriched by retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee . . . ."

However, the court ignored Comment *i* to that section:

"i. *Discharge at a discount.* Where the obligation is discharged by the payment of a sum less than the amount of the obligation, or by the transfer of property the value of which is less than the amount of the obligation, the person discharging the obligation is ordinarily not entitled by subrogation to recover the full amount of the obligation, but can recover only the amount he paid or the value of the property used in discharging the obligation. Thus, a surety is entitled by subrogation to recover only the amount which he paid to discharge the obligation. He is entitled to be made whole, but he is not entitled to make a profit. So also, where a person by mistake discharges the debt of another, he is entitled by subrogation to obtain no more than the amount which he paid to discharge the debt."

Thus, under the Restatement, if Blue Cross paid less to the hospitals than the amount credited to appellant's hospital bills, recovery by Blue Cross of the full amount of the credits would result in the unjust enrichment of Blue Cross.

■ The cases cited by Blue Cross do not justify the Superior Court's invocation of judicial estoppel. It is true that "as a general proposition, a party to an action is estopped from assuming a position inconsistent with his assertion in a previous action, if his contention was success-fully maintained." *Giesey v. Cogan,* 118 Pa.Super. 464, 466, 179 A. 865, 866 (1935), citing *Pivirotto's Estate,* 251 Pa. 548, 97 A. 80 (1916). Here, however, appellant did not "success-fully maintain" his claim; he settled it. It is not clear what portion of the $18,960.18 in medical expenses covered by Blue Cross credits was included in the settlement. What is clear is that Blue Cross is entitled to receive under the equitable doctrine of subrogation only what it actually paid on appellant's behalf, less a reasonable attorney's fee and a proportionate share of costs.[2]

Blue Cross contends, however, that its credits to appel-lant's bills are the only practicable measure of its payments, because its complex system of yearly cost reimbursement to subscribing hospitals precludes the fair determination of payments actually made on behalf of individual patients. In support of this contention, Blue Cross points to flaws in the method of calculation applied by the trial court. For appel-lant's last two hospital stays, the trial court took the total yearly Blue Cross payments to each of the hospitals for all its subscribers—some of whom may have received few hospi-tal services, some many—and arrived at the average Blue Cross payment per patient per day. Blue Cross argues that, since appellant, who was seriously injured, received more than the "average" number of hospital services, recovery based on the average Blue Cross payment per patient-day is inadequate.

■ This criticism may be justified, but it certainly does not compel the conclusion that Blue Cross's actual payments on behalf of appellant are incapable of fair calculation. As the trial court realized but resolved too broadly, it is indeed possible to take the yearly records of Blue Cross's total

2. The Superior Court's determination as to Blue Cross's share of attorney's fees and costs is not challenged on this appeal.

payments to each of the hospitals which treated appellant, apply them to the Blue Cross credits on appellant's hospital bills, and arrive at a fair calculation of the amount Blue Cross actually paid on behalf of appellant.

In its brief on this appeal, Blue Cross provides the following description of its method of determining what it will pay to hospitals under the Uniform Cost Contract of 1967:

"[T]he hospital is divided into different departments, known as cost centers (such as routine care, laboratory, x-ray and the like). Blue Cross' reimbursement to the hospital is determined by adding up all of the allowable costs incurred by each cost center during the fiscal year.

At the end of the fiscal year, the hospital submits to Blue Cross a detailed cost report reflecting the total costs of all of its departments for that year. Allowable costs are segregated from non-allowable ones through audits of the hospital's accounts by Blue Cross auditors and by an independent public accounting firm. The purpose of these audits is to verify each cost center's stated costs and to disallow any which are deemed unreasonable and therefore not reimbursable by Blue Cross."

Thus, it is a simple matter to determine the percentage of each cost center's charges which Blue Cross pays for its subscribers by taking the total charges of each cost center as the denominator and the total charges less "unreasonable costs" (i.e., total allowable costs—the amount Blue Cross actually pays) as the numerator. For example, if, during appellant's stay at hospital A, the total yearly charges of hospital A's radiology department were $1,000,000, and Blue Cross subsequently deemed $100,000 of those charges to represent "unreasonable costs," then 90% $\left(\dfrac{\$900,000}{\$1,000,000}\right)$ of the radiology charges to Blue Cross subscribers during that period were in fact paid by Blue Cross.

Although appellant's hospital bills are, unaccountably, missing from the record before this Court, there can be no doubt that these bills are itemized and that each item is directly traceable to the hospital "cost center" which made

the charge. To determine the amount paid by Blue Cross for each item on appellant's bills, one simply traces each item to the appropriate cost center and then multiplies the amount of the Blue Cross credit for that item by the percentage of that cost center's charges which Blue Cross paid. Returning to the example, if Blue Cross credited appellant for $1000 of radiology charges at hospital A, Blue Cross actually paid 90% of that $1000, or $900.

■ Since every item charged must be charged by a cost center, and since each cost center's total charges and "total allowable costs" for each year must be of record, the above method can be easily applied to every item on appellant's hospital bills for which Blue Cross gave appellant credit. The result will be a fair and accurate measure of what Blue Cross actually paid on behalf of appellant, the only sum to which it is entitled as subrogee.[3]

Accordingly, we vacate the order of the Superior Court and remand this case to the trial court to permit Blue Cross to prove the amounts it paid on behalf of appellant during his last two hospital stays.

Order of the Superior Court vacated and case remanded for proceedings consistent with this opinion.

LARSEN, J., filed a concurring opinion.

LARSEN, Justice, concurring.

I am in complete accord with the majority that the trial court properly limited the amount of subrogation to the extent of actual payments made by appellee Blue Cross. I do not agree, however, to allowing appellee a second oppor-

---

**3.** The above method does not apply to the amount paid by Blue Cross for the period of appellant's first hospitalization, as the Uniform Cost Contract of 1967 had not taken effect at Jefferson Hospital during that time. At trial, Blue Cross proved only that it had made an interim payment of $7405.04 (on a total credit of $8,690.04) under the more "traditional" contract then in effect. Accordingly, the trial court properly limited recovery for that period to $7,405.04.

tunity to prove its case as appellee failed to sustain its burden of proof as to damages (the amount of subrogation).

WILKINSON, J., dissents.