**AFN, INC. d/b/a American Financial Network, Plaintiff,**

**v.**

**SCHLOTT, INC., National Homenet, Inc., Home Mortgage Network, Inc., Matthew Broderick, PHH U.S. Mortgage Corp., Cenlar Federal Savings Bank, Evergreen Mortgage Corp., Home Investors Mortgage Corp., and Merit Financial Corp., Defendants.**

**Civ. A. No. 91–1646 (MTB).**

United States District Court, D. New Jersey.

July 14, 1992.

Feldman Gold & Wachtel by John H. Reichman, West Orange, N.J., for plaintiff.

Hogan and Palace by Michael R. Scully, Hackensack, N.J., for defendants Schlott, Inc., Nat. Homenet, Inc., Home Mortg. Network, Inc. and Matthew Broderick.

## OPINION

BARRY, District Judge.

### I. Introduction

The present action is one of a number of actions between AFN, Inc. ("AFN") and Schlott, Inc. arising out of the business relationship between those parties relating to computerized loan origination ("CLO") systems. Defendants Schlott, Inc., National Homenet, Inc., Home Mortgage Network, Inc. and Matthew Broderick have moved to dismiss AFN's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. AFN has opposed Schlott's motion and cross-moved for Rule 11 sanctions. The

court will deny both Schlott's motion to dismiss and AFN's motion for sanctions.

### II. Factual Background

AFN is the developer and supplier of a CLO system which provides home buyers with information concerning various home mortgage loan programs available from lenders around the country. Amended Complaint ¶ 1. Schlott is a realtor with its headquarters in New Jersey.[1]

In July, 1986, AFN and Schlott entered into a license agreement under which AFN would make its network available to Schlott and its customers. Amended Complaint ¶¶ 18–19 and Exh. A. The license agreement required Schlott to pay, in exchange for access to AFN's CLO system, an initial license fee for each location with access to the system, a monthly fee for each location, an hourly charge for use time on the system, and a "mortgage application transmittal fee" for each mortgage application sent to a lender over the system. License Agreement, Amended Complaint, Exh. A (hereinafter "License Agreement") ¶¶ 4.2–4.5.

AFN also entered into license agreements with various residential mortgage lenders, including the lender defendants. These contracts generally required the lender to pay an initial license fee, a monthly access fee, a usage fee based upon the network time used, and a "mortgage placement fee," which was at least in some, if not all, instances based on the mortgages closed in that month which were obtained by the lender through the use of AFN's network. Amended Complaint ¶¶ 27–30, 122, 130, 135, 140, 145. Schlott employed Financial Service Representatives ("FSRs") to work with borrowers and help select

1. National Homenet, Inc. and Home Mortgage Network, Inc. are wholly-owned subsidiaries of Schlott, Inc., and Matthew Broderick is an employee of Schlott. Inasmuch as these defendants are, for all intents and purposes, alteregos, they will be treated together for the purposes of this motion and referred to collectively as "Schlott."

The remaining defendants in this action, PHH U.S. Mortgage Corp., Cenlar Federal Savings Bank, Evergreen Mortgage Corp., Home Investors Mortgage Corp., and Merit Financial Corp. (hereinafter "lender defendants"), are all resi-

dential real estate lenders located in New Jersey which entered into license agreements with AFN under which their services would be accessible through AFN's network. Amended Complaint ¶¶ 8–13. Each of the lender defendants agreed to pay AFN a "mortgage application fee" for each accepted mortgage application originated through the AFN network. *Id.* ¶ 13.

AFN has settled its claims against certain of the lender defendants. The claims against the remaining lender defendants themselves are not at issue in these motions.

certain mortgage products listed on the AFN network. Affidavit of John Pembroke, dated April 10, 1992 (hereinafter "Pembroke Aff.") ¶ 4. The FSRs would keep in contact with both the lender and the borrower in order to expedite the loan approval process. *Id.* It is AFN's receipt of "mortgage placement fees" without being a licensed mortgage broker or banker which is the basis of Schlott's motion.

### III. Procedural History

In order to fully comprehend the complexity and vitriol of this litigation, it is necessary to examine not only the instant dispute, but the concurrent litigation waged by the parties in other fora. AFN first filed suit against Schlott and two former AFN employees in state court in Texas ("Texas state action"), alleging that Schlott and others converted computer information and confidential and proprietary information from AFN and tortiously interfered with its business relationships. *See* Texas State Action Complaint, Affidavit of John Reichman in Opposition to Motion to Dismiss, dated May 23, 1991 (hereinafter "Reichman May 23, 1991 Aff."), Exh. A. In May, 1990, Schlott filed an action against AFN in the Superior Court of New Jersey, Law Division ("New Jersey state action"), alleging breach of the license agreement, breach of warranty, breach of lender agreements, breach of AFN and Schlott's subsequent "Representative Agreement," tortious interference with contractual relations, and violations of the New Jersey Consumer Fraud Act. *See* New Jersey State Action Complaint, Reichman May 23, 1991 Aff., Exh. B (hereinafter "New Jersey State Action Complaint"). In July, 1990, Schlott filed another action against AFN and its chairman, John Pembroke, this time in federal court in New Jersey. This action, entitled *National*

*Homenet, Inc. v. AFN, Inc.*, No. 90–2636 (AMW), alleged Lanham Act violations, common law fraud, New Jersey Consumer Fraud Act violations, statutory and common law unfair competition, disparagement, tortious interference with contractual relations, and defamation. *See* Reichman May 23, 1991 Aff., Exh. C. In September, 1990, this case, on the court's own motion, was transferred to the Northern District of Texas. *See National Homenet, Inc. v. AFN, Inc.*, No. 90–2636 (AMW) (D.N.J.1990). Finally, in April, 1991, AFN filed the instant action in this court.

AFN's amended complaint alleges, in the main, that while Schlott was an AFN licensee, it was scheming to destroy AFN and take all of AFN's business for itself by developing its own CLO system based on proprietary trade secrets of AFN. Amended Complaint ¶ 2. AFN claims, as well, that Schlott breached its license agreement with AFN by failing to report and pay fees to AFN for loan applications and loans closed by means of the AFN system. *Id.* Finally, AFN alleges that Schlott disparaged AFN and threatened and coerced lenders to pay money owed to AFN to Schlott and to cancel mortgage applications made through the AFN network. *Id.*[2]

In support of its motion to dismiss AFN's amended complaint or, in the alternative, for summary judgment, Schlott argues that all of AFN's claims arise from the license agreement between AFN and Schlott, an agreement Schlott alleges is illegal and, therefore, unenforceable. It contends, more specifically, that AFN is seeking to collect fees for what amounts to the origination or placement of mortgage loans. Pointing to New Jersey's statutory definitions of "mortgage banker" and "mortgage broker", it argues that AFN was acting as either a mortgage banker or

---

**2.** Specifically, the counts against Schlott, Inc., National Homenet, Inc., Home Mortgage Network, Inc., and Matthew Broderick are tortious interference with contractual relations (Count One), tortious interference with prospective economic advantage (Count Two), unfair competition (Count Three), violations of the Lanham Act (Count Four), conversion of trade secrets and confidential and proprietary information (Count Ten), theft of computer information

(Count Eleven), and violations of the New Jersey racketeering statute (Count Twelve). There are also several counts brought only against Schlott, Inc.: breach of the license agreement (Count Five), breach of Representative Agreement (Count Six), breach of implied covenant of good faith and fair dealing (Count Seven), breach of fiduciary duty (Count Eight), and common law fraud (against Schlott and Broderick) (Count Nine).

a mortgage broker[3] and, thus, that its services violated certain portions of the Mortgage Brokers and Bankers Act:

> No person shall act as a mortgage banker or mortgage broker without a license therefor as provided in this act....
>
>  *  *  *  *  *  *
>
> No person not licensed or not exempt from licensure under this act shall receive any commission, bonus or fee in connection with arranging or originating a mortgage loan for a borrower....
>
>  *  *  *  *  *  *
>
> No person or licensee shall pay any commission, bonus or fee to any person not licensed or not exempt under the provisions of this act in connection with arranging for or originating a mortgage loan for a borrower....

N.J.S.A. 17:11B–3(a), 14(d), & 14(e). Citing case law in support of the proposition that contracts made with professionals not in compliance with New Jersey licensing statutes are void as against public policy, Schlott urges that because all of AFN's claims stem from the illegal license agreement, all must fail.

■ AFN opposes Schlott's motion on both substantive and procedural grounds. While maintaining that its activities did not amount to mortgage banker or mortgage broker activity and that, therefore, no license was needed, AFN also disputes the propriety of Schlott's motion. Thus, AFN contends that Schlott has sat on its haunches with reference to this issue while this case has been vigorously litigated, including an earlier unsuccessful motion for a stay or to dismiss pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) in which, in its reply brief, Schlott argued that the doctrine of judicial estoppel precluded AFN from proceeding in this court.[4] More significantly, AFN contends that Schlott should be judicially estopped from arguing that the contract is illegal because of the position Schlott has taken in the concurrent New Jersey state action.

In the New Jersey state action, Schlott, as plaintiff, is suing on the license agreement. One month before its motion to dismiss was filed in this case, Schlott moved in the state action for partial summary judgment, claiming that AFN is withholding certain funds collected by AFN and owed to Schlott under the agreement, as modified by letters dated June 1, 1988 and November 4, 1988. *See* Letter Brief in Support of Schlott's Motion for Partial Summary Judgment, dated February 7, 1992, Reichman May 23, 1991 Aff., Exh. F (hereinafter "New Jersey State Action Letter Brief"). It seeks judgment as a matter of law with respect to "the wrongful withholding by AFN of Two Hundred Sixty-one Thousand Nine Hundred Seventy–Four Dollars and Nine Cents ($261,974.09) which was collected by AFN on behalf of Schlott *under the License Agreement between the parties.*" New Jersey State Action Letter Brief at 1 (emphasis added). Recognizing, as it does, that AFN contests the validity

---

**3.** The New Jersey statute defines "mortgage banker" as

> any person not exempt under Section 2 of this Act who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly originates, acquires, or negotiates mortgage loans in the primary market.

N.J.S.A. 17:11B–1(c). It defines "mortgage broker" as any person not exempt under Section 2 of this Act, who for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly negotiates, places or sells for others, or offers to negotiate, place or sell for others a mortgage loan in the primary market. N.J.S.A. 17:11B–1(d). Section 2 of the Act exempts savings and loan institutions, private investors not engaged in the regular course of a mortgage business, New Jersey attorneys not actively and principally engaged in the mortgage business, licensed New Jersey real estate brokers and salespersons not engaged in the mortgage business, and builders who place mortgages for the sale of their own construction.

**4.** AFN argues that, given this prior motion, Schlott is precluded by Fed.R.Civ.P. 12(g) from bringing the instant motion. AFN is wrong. A motion to stay or dismiss a federal action due to a pending state action is not a Rule 12 motion and, therefore, a second motion to dismiss is not barred by Rule 12(g). *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475 (9th Cir.1988).

of the June 1, 1988 and November 4, 1988 letters as contract modifications, New Jersey State Action Letter Brief at 2–3, Schlott relies, in arguing their validity, on the license agreement and the two letters themselves, all of which it submitted to the court. *See id.*[5] It is, thus, crystal clear that the *sine qua non* of Schlott's position in the state action is that the license agreement was and is a valid and enforceable agreement. Indeed, Schlott's complaint in that action clearly reflects as much. *See, e.g.,* New Jersey State Action Complaint ¶ 21 ("AFN has violated the License Agreement with Schlott."). Parenthetically, Schlott's answer and counterclaim in the Texas state action allege breach of the license agreement by AFN, thus pressing there, implicitly if not explicitly, the legality and enforceability of the same agreement.

Because Schlott is seeking in one court to enforce the very agreement it seeks in this court to avoid as illegal, AFN urges this court to judicially estop Schlott from asserting here a defense that the agreement is illegal. Significantly, Schlott does not claim that it is not simultaneously assuming directly contradictory positions in its quest to vanquish AFN on different fronts. Significantly, too, Schlott appears to have forgotten its earlier statements to this court when, invoking the doctrine of judicial estoppel, it unsuccessfully attempted to stay or dismiss this action:

> AFN apparently operates without conscience with regard to its prior positions urged upon various courts. When it served AFN's purpose to argue [one thing], it did so; when it served a different purpose to change its course, it readily abandoned the prior position. . . .

Reply Br. on Motion to Stay/Dismiss under *Colorado River* at 5. Describing the assumption of contradictory positions as an "affront to judicial dignity", *id.,* Schlott concluded, before it lost its religion, that "AFN's change of position should not be tolerated." *Id.* at 7.

Now, in a one page response, Schlott relies on its interpretation of Third Circuit law which, it argues, requires that for a party to be judicially estopped, it have obtained relief, by a judgment or otherwise, based on its previously asserted contradictory position. Schlott's argument is unavailing, for not only do Third Circuit law and logic not require the conclusion Schlott advocates but, indeed, they counsel against reaching any such conclusion. Therefore, while the underlying substantive dispute may raise weighty questions of what constitutes mortgage broker or mortgage banker activity under New Jersey law, the court need not reach these questions, for the dispositive issue before the court is judicial estoppel.

## IV. Judicial Estoppel

■ Judicial estoppel, sometimes referred to as "preclusion by inconsistent positions," is an equitable doctrine which precludes a party from asserting a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *Delgrosso v. Spang and Co.,* 903 F.2d 234, 241 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). The doctrine is distinct from other forms of estoppel. While what were popularly known as res judicata and collateral estoppel focus on the effect of a final judgment on a party's ability to relitigate a matter which was essential to the judgment, 1B *Moore's Federal Practice* ¶ 0.405[8] at 239 (2d ed. 1992), and equitable estoppel looks to the relationship between the parties, requiring representation, reliance, and prejudice, *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), judicial estoppel centers on the relationship between the litigant and the judi-

---

**5.** The affidavit of Matthew Broderick in support of Schlott's motion for partial summary judgment in the state action similarly invokes the license agreement. That affidavit states that "the License Agreement between AFN and Schlott Realtors required AFN to collect on be-half of Schlott origination fees which Schlott had earned by originating loans with individual lenders." Second Supplemental Affidavit of Matthew Broderick, Reichman May 23, 1991 Aff., Exh. F, ¶ 2.

cial system. *Delgrosso*, 903 F.2d at 241; *Oneida Motor Freight*, 848 F.2d at 419.

■ The doctrine traces its roots to the Supreme Court's enunciation in *Davis v. Wakelee* that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895). First adopted in the Third Circuit in *Scarano v. Central Railroad Co.*, the doctrine represents a measure of protection of the integrity of the courts, designed to prevent litigants from "playing fast and loose with the courts." 203 F.2d 510, 513 (3d Cir.1953).[6] Thus, a court may apply the doctrine in a situation where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Scarano*, 203 F.2d at 513.

The contours of the doctrine are, for the most part, relatively straightforward. The doctrine applies to assertions of both factual and legal positions. *See Hardwick v. Cuomo*, 891 F.2d 1097, 1105 n. 14 (3rd Cir.1989); *In the Matter of Cassidy*, 892 F.2d 637, 641–42 (7th Cir.), *cert. denied sub nom. Cassidy v. Comm'r*, —— U.S. ——, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 214 (1st Cir.1987); *United States v. Starrett City Associates*, 605 F.Supp. 262, 264 (E.D.N.Y.1985). Not surprisingly, judicial estoppel may be applied based on the assertion of a party or a party's legal counsel. Thus, a position taken or a representation made by counsel in a legal brief or in argument to the court may provide a basis for estoppel. *Lewandowski v. National Railroad Passenger Corp.*, 882 F.2d 815, 819 (3d Cir.1989). If there is an uncertain aspect of the doctrine of judicial estoppel it is whether a party can be estopped only when its inconsistent assertion was actually adopted by the court in the prior action [7] or at least was successful-

**6.** This court has jurisdiction over the instant dispute pursuant to 28 U.S.C. § 1331 by virtue of AFN's Lanham Act claims, *see* Amended Complaint, Count Four, ¶¶ 70–72, and supplemental jurisdiction over the remaining claims by virtue of 28 U.S.C. § 1367. In addition, the court has jurisdiction by virtue of the diversity of citizenship of the parties, pursuant to 28 U.S.C. § 1332. The parties agree, correctly, that the appropriate governing law is federal law. *See Angel v. Bullington*, 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947) ("where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State").

Even where this action brought to this court solely based on diversity of citizenship, the issue of judicial estoppel would be one properly resolved by the application of federal law rather than state law. While it is generally true that in disputes which come to federal court solely on the basis of diversity of citizenship, the federal court is bound under *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to apply the law of the state in resolving questions of state law, this rule is not absolute. *See Byrd v. Blue Ridge Rural Electrical Cooperative, Inc.*, 356 U.S. 525, 537–38, 78 S.Ct. 893, 900–901, 2 L.Ed.2d 953 (1958) ("affirmative counterveiling considerations" relating to a "strong federal policy" may warrant the application of federal law in a diversity case). Because the function of judicial estoppel is to protect a court's—and,

here, a federal court's—integrity, this case would present a compelling case for an exception to *Erie*. *See Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 n. 4 (4th Cir.1982). *But see Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980); *Reno v. Beckett*, 555 F.2d 757 (10th Cir.1977); *Walker v. American Motorists Ins. Co.*, 529 F.2d 1163, 1164–65 (5th Cir.1976). Parenthetically, the Third Circuit in *Scarano*, a diversity action, applied federal law to resolve the judicial estoppel question, albeit without explicitly stating its reasons for doing so.

Even Judge Bryan's dissent in *Allen* recognized that "[a]lthough the Federal policy [of applying federal judicial estoppel law to protect the integrity of the federal courts] is not without some force, it must yield when the choice of a Federal rule necessitates a result contrary to that attaining under the applicable state rule." *Allen*, 667 F.2d at 1168 n. 1 (Bryan, J., dissenting). Finding that federal law required a result contrary to that under state law, the dissent opined that federal law should, in that instance, defer to state law. Of course, given that New Jersey law on judicial estoppel, as expressed in *Levin v. Robinson, Wayne & La Sala*, 246 N.J.Super. 167, 586 A.2d 1348 (Law Div.1990), is in accord with the law of the Third Circuit (law, I note, which the *Levin* court cited extensively), even were state law to be applied, the result would be the same.

**7.** *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982). The Ninth Circuit which, I note, has not itself determined what is

ly maintained in that action without necessarily having been judicially adopted, or whether the offending party need only have played "fast and loose" with the court even if ultimately unsuccessful in the prior action.[8]

The purpose behind the requirement that there have been judicial adoption or, in some other respect, successful maintenance of a prior inconsistent position is that, absent acceptance of that prior position, there is no risk of inconsistent results and, thus, the integrity of the judicial process is unaffected and the perception and/or danger that either the first or subsequent court was misled is not present. *Stevens Technical Services*, 885 F.2d at 588–89. And, presumably because of the view that the integrity of the judicial process can be sorely compromised short of inconsistent results, the purpose of the broader view of the doctrine of judicial estoppel is to vindicate the integrity and efficacy of the court by preventing the offending party from continuing in "fast and loose" behavior which undermines the integrity of the court. *Patriot Cinemas*, 834 F.2d at 214. Indeed, if what is at issue is the integrity of the court, whether a court is asked to rely or has in fact relied on a prior inconsistent position should be a distinction without a difference.

A determination as to whether and how, in this circuit, a party may be judicially estopped must necessarily begin with *Scarano*. The oft-quoted holding of *Scarano* states that, "[a] plaintiff who has

obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with the earlier contention." *Scarano*, 203 F.2d at 513. On its face, this statement appears to suggest a requirement that before a party may be estopped, the prior position must have been successfully maintained.[9] The facts of *Scarano*, however, indicate that the estoppel ordered there did not turn on any such requirement.

The plaintiff in *Scarano* brought suit under the Federal Employers Liability Act to recover for injuries sustained while working for the defendant. After a jury returned a verdict in plaintiff's favor but before the court had ruled on defendant's motion for a new trial, the parties settled the action. *Id.* at 511. Thereafter, plaintiff brought a second action against defendant for breach of contract and sought, in connection therewith, lost wages, past and future. Based on plaintiff's assertion in the first action that he was "totally incapacitated from resuming his former occupation or from engaging in any other form of labor", he was estopped from making a contrary assertion in the second action. *Id.* at 511–12. The court noted that to require a judgment based on the earlier assertion in order to invoke judicial estoppel would confuse that concept with collateral estoppel. *Id.* Deriving its ruling from the general principle that "a party to litigation will

---

required before the doctrine may be applied, describes prior judicial adoption as the "majority view." *See, e.g., Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 716 (9th Cir.1990); *Stevens Technical Services, Inc. v. S.S. Brooklyn*, 885 F.2d 584, 588–59 (9th Cir. 1989). I question the use of the word "majority" given the cases cited in the Ninth Circuit cases; indeed, only *Edwards* held that prior judicial adoption was required. None of the other cases cited held even that, short of judicial adoption, a prior inconsistent position must have been successfully maintained. Thus, *Allen v. Zurich Inc. Co., supra*, cited in both Ninth Circuit cases, did not confine application of the doctrine to situations in which the party asserting the earlier contrary position had prevailed, although the Fourth Circuit found it more appropriate in that situation. 667 F.2d at 1167.

The only other two cases cited by the Ninth Circuit, while preferring a judicial adoption or a successfully maintained requirement, do not even recognize the doctrine in their respective jurisdictions. *See United States v. 49.01 Acres of Land*, 802 F.2d 387 (10th Cir.1986); *Konstantinidis v. Chen*, 626 F.2d 933 (D.C.Cir.1980).

**8.** *See Patriot Cinemas*, 834 F.2d at 213.

**9.** Certainly, *Scarano* did not require a judicial adoption of an inconsistent assertion in prior litigation. In explaining why collateral estoppel was inappropriate, the court noted that there was "a substantial dispute as to what the former judgment decided about plaintiff's physical condition...." 203 F.2d at 512.

not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits," the court declined to decide whether the rule should be that broad. *Id.* at 513 (quoting II Freeman on Judgments § 631 (5th ed. 1925)).[10] Rather, recognizing that each case must be decided on its own facts and circumstances and relying on the fact that the "rendition of the $35,000 verdict was a significant factor in the negotiations which led ultimately to a stipulated judgment in the amount of $27,750," *id.* at 513 n. 3, the court's holding was restricted to the facts before it, with the outer boundaries of the doctrine left open for future consideration.

Although Third Circuit law in the wake of *Scarano* has recited the holding of that case, that court has pointedly and repeatedly focused its analysis on the *assertion* of a prior position, treating the "benefit" requirement of *Scarano* more as a factor to be considered or weighed than as a mandatory element of the doctrine. While the prior position may, in fact, have been successfully maintained in many or most of those cases, the court has clearly indicated that judicial estoppel can be applied in the absence of having successfully maintained the prior position, opining on more than one occasion that "application of doctrine of judicial estoppel is *particularly* appropriate in situations like this, where the party benefitted from its original position." *Delgrosso*, 903 F.2d at 242 (emphasis added); *see also Murray v. Silberstein*, 882 F.2d 61, 66 (3d Cir.1989).[11] In *Lewandowski*, for example, the court noted that "the critical issue is what the employee contended in the underlying proceeding, rather than what the jury found." 882 F.2d at 819. *See also Hardwick*, 891 F.2d at 1105, n. 4 (the doctrine binds parties to factual

and legal positions); *Oneida Motor Freight*, 848 F.2d at 419 (the doctrine precludes a party from assuming a position inconsistent with one previously asserted); *Shell Oil Co. v. Trailer & Truck Repair Co.*, 828 F.2d 205, 209 (3d Cir.1987) (the doctrine prevents a party from arguing contradictory positions in different actions). Moreover, the district court in *Wade v. Woodings–Verona Tool Works Inc.* explicitly held that there is no requirement that a prior position be successfully maintained in order to apply judicial estoppel. 469 F.Supp. 465, 467 (W.D.Pa.1979). To impose such a requirement, the court noted, would be to confuse judicial estoppel with other types of estoppel, most particularly collateral estoppel.

While the Third Circuit has focused its attention on the assertion of a prior position, *Oneida Motor Freight* did not require even that much before finding that Oneida, a Chapter 11 debtor, was both equitably and judicially estopped from further litigating a claim against a creditor which could have been the basis for recovery against that creditor as well as the basis for financial benefits to other creditors if the claim had been successfully prosecuted. Oneida had previously failed to disclose the claim in its reorganization plan, much less take or successfully maintain a position with reference to that claim, and the Bankruptcy Court was unaware that Oneida even thought that it had such a claim. "The silence," said the Third Circuit, was "deafening." 848 F.2d at 417.

We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank

---

10. A more contemporary application of that principle is evident in the discretion accorded a court, when considering a motion for summary judgment, to disregard a party's subsequent contradiction, without a satisfactory explanation for the contradiction, of his or her prior testimony. *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 705–06 (3d Cir.1988).

11. Although the court in *Murray* quotes a passage from *Bower v. O'Hara*, 759 F.2d 1117, 1129

(3d Cir.1985) which appears to endorse the requirement that a prior position have been successfully maintained, that language is itself quoted from a Pennsylvania state case, *Associated Hospital Service v. Pustilnik*, 497 Pa. 221, 227, 439 A.2d 1149 (1981). In the context in which the "successfully maintained" language is used in *Bower*, it does not appear, even in that instance, to constitute an inflexible requirement.

argues, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Id.* at 419.

Finding no requirement in the law of the Third Circuit that a party have been successful in its prior position, and in consideration of the strong policy rationale underlying the concept of judicial estoppel, Schlott will be judicially estopped from asserting that its agreement with AFN is illegal.[12] Schlott's actions are clearly the type of "evil the courts should not tolerate." *Scarano*, 203 F.2d at 513. Embroiled in simultaneous litigation over the same subject matter with the same adversary, Schlott has maintained and sought court rulings in different fora at the same time on diametrically opposed positions with respect to the validity of Schlott's license agreement with AFN; indeed, it makes no attempt to characterize its positions in the two courts (which, presumably, could simultaneously determine that the agreement is legal and illegal) as anything other than completely opposite. Having exhorted the Superior Court of New Jersey to rule in its favor based on its agreement with AFN, Schlott cannot now be heard to shield itself from liability by simultaneously asserting the invalidity of that agreement. "If par-

ties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer." *Patriot Cinemas*, 834 F.2d at 214. In furtherance of the broader policy of protecting the integrity of the court and the judicial system, "no further judicial aid [will] be given this particular enterprise of blowing hot and cold as the occasion demands." *Allen*, 667 F.2d at 1167 n. 3. Because Schlott will be estopped from asserting that its contract with AFN is illegal, its motion to dismiss the complaint or, in the alternative, for summary judgment, will be denied.

## V. Rule 11 Sanctions

■ AFN's motion for Rule 11 sanctions will be denied as well. AFN sought Rule 11 sanctions against Schlott because Schlott has "taken diametrically opposed positions before two different courts within the space of a little more than a month." (Pl.Br. at 5). Beyond that, AFN argues, Schlott should have known that it would be judicially estopped from making its "frivolous" motion to dismiss given that it moved to dismiss AFN's complaint the first time around on the ground of judicial estoppel. *Id.* at 2–3, 29. The motion and the inconsistent position asserted therein, AFN concludes, aside from being wholly without merit, were made in bad faith and for purposes of delay and have caused AFN need-

---

**12.** To the extent that this conclusion is inconsistent with the result reached in *Zenith Laboratories, Inc. v. Bristol–Meyers Squibb Co.*, 1991 WL 267892, 1991 U.S.Dist.Lexis 18463 (D.N.J.1991), I respectfully disagree with the result in that case. While the court in *Zenith Laboratories* recognized that the Third Circuit has not explicitly endorsed such a requirement, it nonetheless concluded that success in the prior position is required "because, as in other forms of estoppel, reliance is the basis for the bar." *Id.* 1991 WL 267892 at *11, 1991 U.S.Dist.Lexis 18463 at *33. As noted earlier, however, judicial estoppel is a unique form of estoppel whose justification lies in protecting the integrity of the courts. A party's cavalier switch of position from one case to the next or from one proceeding to the next is inimical to the integrity of the judicial system, regardless of whether the court affirmatively relies on the representation. *Zenith Laboratories* also makes reference to the propriety of alternative pleading under the Federal Rules of

Civil Procedure. *Id.* 1991 WL 267892 at *11, 1991 U.S.Dist.Lexis 18463 at *34–35 (citing Fed. R.Civ.P. 8(e)(2)). This analogy to alternative pleading is not persuasive. While a party may quite properly plead that A or, in the alternative, B, is true, it is quite another thing for a party to assert that A, which directly contradicts B, is true at one time for one purpose and later assert that B is also true at another time for another purpose. *See* 1B *Moore's Federal Practice* ¶ 0.405[8] at 243. n. 22 (2d ed. 1992). *See also Allen*, 667 F.2d at 1167, in which the court, citing Fed.R.Civ.P. 8(e), distinguished the intentional self-contradiction in separate legal proceedings which the doctrine of judicial estoppel is justified in preventing from the permissible practice of "simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached."

less litigation costs.[13]

The all-too-familiar Rule 11 provides, as relevant here, that an attorney's signature certifies that he or she has read the pleading or motion or other papers that has prompted the Rule 11 application; and that that pleading or motion is well grounded in fact and law and not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation. If the pleading or motion has been signed in violation of Rule 11, sanctions shall. be imposed on the attorney or the client or both. The test is one of reasonableness under the circumstances, and good faith is not a defense. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991).

There is nothing reasonable about Schlott's intentional decision to take a position in this court just one month after it had taken a diametrically opposed position in the state court; indeed, that decision is one more example of the fact, and fact it be, that AFN and Schlott are at each other's throats in this and each of the other cases in which they are involved. It is also true, of course, that Schlott's motion to dismiss in which the fact of diametrically opposed positions first surfaced has delayed resolution of the merits of the action and has caused AFN to expend time and money.

But that is not enough. Of critical importance in a Rule 11 analysis is whether the motion to dismiss was well grounded in fact and law. Given the disposition on the ground of judicial estoppel, however, the merits of the mortgage banker-mortgage broker argument on which the motion was predicated were not reached much less any conclusion drawn as to whether the motion was or was not well grounded in fact and law or interposed for at least one improper purpose.

AFN's contention that Rule 11 sanctions are called for because Schlott should have known that it was judicially estopped from taking inconsistent positions having earlier invoked the very authority invoked against it now is similarly unavailing. Although not the law in the Third Circuit, at least in this court's view, there is caselaw which supports Schlott's contention that until its prior position has been "successfully maintained," it can effectively do whatever it pleases before any court of its choice. AFN's motion for Rule 11 sanctions will be denied.[14]

---

**13.** AFN also seeks Rule 11 sanctions because (1) Schlott failed to cite directly contrary authority as to its mortgage banker-mortgage broker argument even though its current counsel represented it in the proceeding from which the contrary authority emanated; and (2) Schlott has failed to answer a single interrogatory or produce a single document even though its request for a stay of discovery was denied by the Magistrate Judge. It is inappropriate to determine whether Rule 11 sanctions are warranted on these grounds, first, because given the disposition on the ground of judicial estoppel, it was unnecessary to consider the mortgage banker-mortgage broker argument thus making it impossible to determine at this juncture whether contrary authority should have been and was not cited and, second, because any discovery abuses occurred before, and should be brought to the attention of, the Magistrate Judge.

**14.** Even if Rule 11 sanctions were warranted, the order barring Schlott from defending on the ground that the license agreement is illegal would be sanction enough for this court.