MURRAY, Charles E., Jr., Appellant,

v.

SILBERSTEIN, Alan K. President Judge of the Philadelphia Municipal Court, individually and on behalf of the Board of Judges of the Philadelphia Municipal Court.

No. 89–1040.

United States Court of Appeals, Third Circuit.

Argued June 1, 1989.

Decided Aug. 10, 1989.

---

Sharon K. Wallis (argued) and Isadore A. Shrager, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellant.

Howland W. Abramson (argued) Nancy E. Gilberg, Administrative Office of PA Courts, Philadelphia, Pa., for appellee.

Stefan Presser and Doreena P. Wong, American Civil Liberties Union of Pennsylvania, Philadelphia, Pa., for amicus curiae, American Civil Liberties Union of Pennsylvania.

Before HIGGINBOTHAM, GREENBERG and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This case is before the court on appeal by Charles E. Murray, Jr., a former bail commissioner of the Philadelphia Municipal Court, from a judgment of December 14, 1988, upholding his removal from office. The court, on its own motion, granted the judgment under Fed.R.Civ.P. 12(c) to the defendant and appellee, Alan K. Silberstein, president judge of the Philadelphia Municipal Court, individually, and on behalf of the Board of Judges of the Philadelphia Municipal Court. We will dismiss the appeal as moot.

In 1984 Pennsylvania adopted legislation, now codified as 42 Pa.Cons.Stat.Ann. § 1123(a) (Purdon Supp.1989), creating the office of bail commissioner for the Philadelphia Municipal Court. Under the legislation, the president judge and a majority of the judges of the court are authorized to appoint six bail commissioners for four year terms. On November 16, 1984, the Philadelphia Municipal Court adopted rules governing the selection and appointment of the commissioners, establishing standards for their conduct and setting forth their rights, responsibilities and authority. Rule 7.03 prohibits bail commissioners from en-gaging in partisan political activity and rule 7.04 requires a bail commissioner to urge family members to adhere to the same standards of conduct that apply to him or her. Rule 7.03, however, as originally adopted, did not directly attempt to control partisan political activities of family members, though it was amended in 1988 to do so.

In February 1985, Joseph R. Glancey, then president judge of the Municipal Court, met with Murray and his wife, Bridget Murray, and indicated that he intended to nominate Murray as a bail commissioner. Murray was a Democratic ward leader but was aware of the restriction on political activity for bail commissioners and thus intended to resign his political post if appointed. While there is a dispute as to the length of the restriction to be imposed on her, there is no doubt that Glancey made the appointment contingent on Bridget Murray not replacing Murray as ward leader. According to Murray, the agreement only precluded his wife from directly succeeding him as ward leader but Silberstein, who has taken Glancey's place as president judge, asserts that the agreement was that Bridget Murray would not serve as ward leader during Murray's term as bail commissioner.

In any event, Murray was appointed a bail commissioner on February 19, 1985, for a four year term commencing February 22, 1985, and he did resign as ward leader. Murray's father was then selected to fill the vacancy as ward leader, a substitution not objectionable to the judges of the Municipal Court. About one year later, however, when his term as ward leader was expiring, Murray's father decided not to run again for the office. At that time Bridget Murray determined that she would run in his place even though, according to Murray, he asked her not to do so. She in fact ran and was elected on June 9, 1986.

Bridget Murray's election as ward leader did not go unnoticed. About one week later Glancey, the Municipal Court administrator and Silberstein, who by then was acting president judge, met with Murray. They advised Murray that they considered

that Bridget Murray, by holding the office of ward leader, had violated the agreement negotiated with Glancey before Murray's appointment. Accordingly, they told Murray that unless she resigned, they would take steps to remove him as a bail commissioner. Bridget Murray, however, refused to resign even though Murray asserts that he asked her to do so.

On July 3, 1986, Silberstein sent Murray a letter reviewing his understanding of the history of Murray's appointment and the restrictions on Bridget Murray and stating "it is my intention to recommend to the Board of Judges your removal as a Bail Commissioner of this Court." Silberstein indicated, however, that Murray was entitled to be heard on the matter and consequently a hearing was set for July 17, 1986. The July 3, 1986, letter indicated that the hearing would be before the judges and that Murray could appear then with counsel and witnesses.

The hearing was held as scheduled and Glancey and Murray testified. Bridget Murray also was present and sought to testify but, after an offer of proof, the judges ruled that her testimony would be irrelevant and thus she was not permitted to testify. Following the hearing, the judges voted to remove Murray from office effective August 15, 1986. The removal was to be pursuant to rule 1.01 of the bail commissioner rules which provides for removal of a commissioner for misconduct.

On August 8, 1986, Murray brought this action. In his verified complaint he described the "nature of the proceeding" as an action "for injunctive and declaratory relief to restrain" Silberstein from removing him from office without affording him procedural due process or, in the alternative, on grounds violating his constitutionally protected rights. Jurisdiction was invoked under 28 U.S.C. §§ 1331 and 1343 to redress rights secured by 42 U.S.C. § 1983 and the Fourteenth Amendment. After setting forth the facts above described, Murray asserted that his procedural due process rights were violated when he was not given an opportunity to present testimony to refute the charges against him.

He also claimed that his due process rights under the Fourteenth Amendment were violated because his wife's conduct was imputed to him. Furthermore, he charged that the removal violated "his constitutionally protected rights of freedom of association and family privacy" and was predicated on "a proscription which is unconstitutionally vague and overbroad." Significantly, Murray pleaded as follows:

Unless preliminary injunctive relief is ordered, as requested herein, Plaintiff will suffer irreparable injury including deprivation of wages for which monetary damages is not available, and deprivation of his constitutionally protected rights as set forth above.

Murray asked for preliminary and final injunctive relief restraining Silberstein from removing him from office. He also asked that a declaratory judgment be entered holding rule 7.04, dealing with the conduct of a bail commissioner's family members, unconstitutional as vague and overbroad. Finally he asked for counsel fees and "such other relief as the Court may deem appropriate." Understandably, in view of his contention that he would suffer irreparable injury if he did not obtain a preliminary injunction, as monetary relief was not available, he did not ask for damages.

On August 8, 1986, Murray also filed a motion for a preliminary injunction with a supporting memorandum of law which he refiled on August 12, 1986, in a slightly modified form. In both versions of his memorandum, after acknowledging that to obtain preliminary injunctive relief he had to show, among other things, that he would suffer "irreparable harm" unless he obtained the injunction, he set forth:

Plaintiff will suffer irreparable injury if preliminary relief is not granted as requested herein, since monetary damages to compensate him for lost wages are not available by reason of the Eleventh Amendment. See *Savage v. Commonwealth of Pennsylvania* 475 F.Supp. 524 (E.D.Pa.1979), *aff'd,* 620 F.2d 289 (3d Cir.1980); *Edelman v. Jordan,* 415 U.S. 651 [94 S.Ct. 1347, 39

L.Ed.2d 662] (1974). Moreover, where, as here, preliminary injunctive relief is requested to prevent the violation of constitutional rights, no further showing of irreparable injury is required. *Elrod v. Burns,* 427 U.S. 347, 373–75 [96 S.Ct. 2673, 2689–91, 49 L.Ed.2d 547] (1976); *McCormick v. Hirsch,* 460 F.Supp. 1337, 1349 (E.D. [M.D.] Pa., 1978).[1]

It appears from the district court docket sheets that Silberstein filed no answering memorandum or other papers on Murray's application.

On August 15, 1986, a preliminary injunction was entered and Silberstein was enjoined until the further order of the court or final hearing from terminating Murray from his employment as a bail commissioner. The order of the district court did not explain why the injunction was entered, though it did recite that there had been an exchange of views at a conference at which the parties were represented. Inasmuch as Murray's removal from office was not to be effective until August 15, 1986, he continued in office without interruption until after the final hearing in this case.

On March 24, 1988, Murray filed a motion for a judgment on the pleadings and the district court ruled on the matter in a memorandum opinion dated December 14, 1988. *Murray v. Silberstein,* 702 F.Supp. 524 (E.D.Pa.1988). In its opinion the court described the background of the case, indicating that "most of the underlying facts are undisputed." *Id.* at 525. It concluded that Murray's claim that his removal from office violated his First Amendment right to freedom of association with his wife was overcome by the circumstance that "no means less restrictive than removal exists to serve the state's compelling interest in judicial integrity." *Id.* at 529. The court viewed the matter as involving Murray's activities, not those of his wife, as Murray promised that she would not become the ward leader. *Id.* at 531. Thus, notwithstanding the fact that there was a dispute

as to what was the agreement, *i.e.,* an agreement that she would not succeed him or an agreement not to be ward leader while he was a bail commissioner, the court concluded that Murray implicitly guaranteed "he would not serve as bail commissioner should his wife become ward leader." *Id.* at 531. The court reasoned that Murray had breached this implicit guarantee by "*his* failure to resign after his wife's election." *Id.* The court also held that because Murray's situation was unique, it could not be said he was the victim of *ad hoc* treatment. *Id.* The court further found that Murray received procedural due process at the pretermination hearing. *Id.* at 532.

After the court concluded that Murray was not entitled to a judgment on the pleadings, it found that "no other issues remain before this court." *Id.* Consequently, even though Silberstein had not moved for a judgment himself, the court ruled that he was entitled to judgment under Fed.R.Civ.P. 12(c) in his favor. Accordingly, the order of December 14, 1988, was entered, though the vacation of the preliminary injunction was stayed until January 14, 1989. This appeal followed.

When we reviewed the matter it appeared that the case might be moot as Murray had been appointed for a four year term effective February 22, 1985, and the preliminary injunction resulted in him staying in office at least through January 14, 1989. It was unclear on the record before us if, in fact, Murray had been discharged before his term expired. Furthermore, inasmuch as his term of office had expired we could not perceive how we could grant him injunctive relief restoring him to office. *See In re Cantwell,* 639 F.2d 1050, 1053–54 (3d Cir.1981). Therefore, we directed the clerk to inquire as to whether Murray was still in office and as to whether the case was moot.

---

**1.** There was a typographical error in the above paragraph in the original version which was corrected in the second version which we quote. Murray did not contend in his memorandum that damages would not be available if he did

not obtain a preliminary injunction simply because they would accrue after his complaint was filed. *See Rea v. Ford Motor Co.,* 560 F.2d 554, 557 (3d Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977).

Our inquiry caused Murray to serve a motion under 28 U.S.C. § 1653, which permits amendments to cure defective allegations of jurisdiction, even on appeal. The motion sought to amend the complaint "to state a claim for damages on the basis of occurrences which took place after the present case was on appeal." In the motion Murray recited that he was in office until January 14, 1989, when he was removed. Accordingly, he "suffered monetary damages in that he lost wages and fringe benefits for the period from January 14, 1989 through February 24, 1989."[2] Murray explained that the "proposed supplement is necessary so that the record will reflect Appellant's claim for monetary damages, and avoid the appearance that the controversy is moot."

Furthermore, Murray, in a letter in response to our inquiry regarding mootness, urged, citing *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), that if he "prevails on the merits, he will be entitled to recover monetary damages, measured by his lost wages and fringe benefits for the period from January 14, 1989 through February 24, 1989" as "state court judges do not have absolute immunity from suit for damages under 42 U.S.C. § 1983 for discharging a court employee." Letter from Sharon K. Wallis, attorney for Murray, to Sally Mrvos, Clerk of the Court (May 23, 1989) [hereinafter Wallis letter]. He also cited *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969), for the proposition that an action by a congressman challenging a resolution refusing to seat him was not moot even though the Congress had expired and the congressman was seated in the next Congress, as back salary and a declaratory judgment were sought.[3] While Murray acknowledged that his complaint "does not specifically request monetary damages," though it did ask for "such other relief as the court may deem appropriate," he explained that this was because

there was no basis for monetary relief when he filed the complaint and the preliminary injunction went into effect before he was dismissed. Wallis letter at 2. Murray did not bring to our attention that when he sought the preliminary injunction, he had asserted that the Eleventh Amendment barred the claim for damages.

Amicus curiae, American Civil Liberties Union of Pennsylvania, also filed a letter contending that the matter was not moot. In addition to supporting Murray's claim for damages, it urged that "there are important public policy reasons why this case is not moot" because of its "civil liberties implications" regarding "critical constitutional issues, such as the right of marital privacy and association, due process and equal protection, as well as the authority of public officials to make *ad hoc* decisions in an arbitrary and capricious manner." Letter from Doreena Wong, attorney for American Civil Liberties Union of Pennsylvania, to Sally Mrvos, Clerk of the Court (May 23, 1989). Thus, the letter stated that the case had "ramifications far beyond this specific incident and the particular conduct of the Municipal Court Judges." Silberstein filed a letter pointing out that Murray in his complaint only sought an injunction, not damages, and contending that the case was moot. He viewed Murray's failure to seek damages not as a defect within 28 U.S.C. § 1653, but as a waiver of a claim for them. Letter from Howland W. Abramson, attorney for Alan K. Silberstein, to Sally Mrvos, Clerk of the Court (May 25, 1989).

It is evident to us that we must dismiss the appeal as moot. Unquestionably the relief which Murray sought when he filed his complaint was principally injunctive. Thus, he did not ask for a monetary recovery in the form of back pay or otherwise, though he did ask for "such other relief as the Court may deem appropriate." While he now indicates that there was then no basis for a monetary recovery because a

2. We are not told why Murray claims that his four year appointment extended a few days beyond four years measured from February 22, 1985. In view of our result, however, the point need not be resolved.

3. Murray also cited *Ellis v. Brotherhood of Ry. Employes*, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

preliminary injunction gave him complete relief, this is a circular argument as it was the asserted unavailability of monetary relief which was said to justify the injunction. Furthermore, Murray's argument misstates the record. As we have pointed out, he urged in both his complaint and his memorandum supporting his application for the preliminary injunction, that he was entitled to an injunction as monetary damages, including back wages, were "not available." [4] In his memorandum to the district court, Murray revealed that he thought damages were not available as they were barred by the Eleventh Amendment.

Thus, while the standard remedy for violation of 42 U.S.C. § 1983 is compensatory damages, *see Hohe v. Casey*, 868 F.2d 69, 73 n. 6 (3d Cir.1989), Murray urged he could not obtain that remedy and was accordingly entitled to a preliminary injunction. Murray's problem now is that he cannot be permitted to retreat from his original position that the Eleventh Amendment bars his claim for damages including back wages.[5]

The governing law in this circuit barring switches in position of this kind, known as the doctrine of judicial estoppel, was recently set forth in *O'Neida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988):

> We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation.

*Id.* at 419.

Thus Murray is judicially estopped from seeking damages in this action.

This case is particulary appropriate for applying an estoppel because Murray benefited from his original position. After arguing in the district court that a preliminary injunction should be entered because damages were unavailable, Murray obtained the injunction. As Judge Sloviter explained in *Bower v. O'Hara*, 759 F.2d 1117, 1127 (3d Cir.1985) (concurring and dissenting opinion): "Under [judicial estoppel], 'as a general proposition, a party to an action is estopped from assuming a position inconsistent with his assertion in a previous action, if his contention was successfully maintained.'" *Id.* at 1129; *see also Scarano v. Central R. Co.*, 203 F.2d 510, 512–13 (3d Cir.1953) ("'The 'estoppel' of which, for want of a more precise word, we here speak is but a particular limited application of what is sometimes said to be a general rule that 'a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits.'") The bottom line is this: inasmuch as Murray contended, correctly or not, that damages, including back pay, were not available in this action as they were barred by the Eleventh Amendment so that he was entitled to preliminary injunctive relief, he may not now, when injunctive relief is no longer possible, reverse his position and argue that damages

---

**4.** He also said in his memorandum in support of his application for a preliminary injunction that "monetary damages are not involved" and "monetary damages are not appropriate and are not sought."

**5.** We, of course, are not passing on the issue. What counts here is not what the law actually is but rather the position that Murray urged when he successfully sought a preliminary injunction. Murray's change in position cannot be excused by the circumstance that *Forrester v. White*, 108 S.Ct. at 539, was decided after he filed his complaint as *Forrester v. White* dealt with immunities of judges which are not dependent on the Eleventh Amendment but rather have their origin in the common law. Furthermore, in his memorandum to the trial court Murray recited that "[t]his action does not come within Defendants' cloak of judicial immunity because the Defendants acted in their administrative, not judicial, capacities in making determinations regarding the appointment and removal of Bail Commissioners." This was the very division of function recognized in *Forrester* for the purpose of determining if a judge had absolute immunity for his or her acts.

are available. Thus, there is no relief which Murray may obtain and the case is moot. We will, of course deny his motion to amend his complaint under 28 U.S.C. § 1653.[6]

In reaching our result we do not ignore the argument of the American Civil Liberties Union that because of the significance of the issues involved we should hear the matter. Indeed, we are troubled by the removal of a public officer from his position because of the conduct of a family member. Furthermore, we recognize that cases supporting direct restrictions on public officials themselves, on which Silberstein relies, are not direct support for what happened here. We are also aware that cases that are capable of repetition but evade review may be heard even though they might otherwise be moot. *New Jersey Turnpike Auth. v. Jersey Cent. Power and Light,* 772 F.2d 25, 31 (3d Cir.1985). Here, however, there is no chance that Murray again will ever be subjected to the same problem and thus the case is not subject to repetition. *Id.* Accordingly, troubled as we are, unless we are prepared to jettison the law of judicial estoppel, which we are not and in any event cannot do, we cannot adjudicate this case on the merits.[7]

In the circumstances we will follow the procedure set forth in *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950), and will vacate the order of December 14, 1988, and will remand the matter to the district court

---

**6.** We do not imply that an amendment to seek damages may be regarded as encompassed within 28 U.S.C. § 1653 for regardless of whether it is or is not, there is no merit to Murray's motion in view of his original position in the case. Thus, we have no need to consider the scope of 28 U.S.C. § 1653.

**7.** We also recognize that the issues in this case might never be repeated in cases involving other bail commissioners. There are only six commissioners authorized and quite possibly none will ever be confronted with a problem similar to Murray's. Furthermore, in December 1988, rule 7.04 dealing with restrictions on partisan political activity, was extended to immediate members of the commissioners' households.

to dismiss this action. Each party will bear his own costs of this appeal.

Thus, future controversies regarding a commissioner's spouse's political activities, if they ever arise, will not involve oral understandings. We also point out that this case could well have been decided on nonconstitutional grounds if we had reached the merits, as the district court held without a trial that Murray implicitly guaranteed he would resign if his wife became ward leader but Murray denied that. We are also aware that Murray has sought a declaratory judgment that rule 7.04 is unconstitutional but obviously there is no basis to pass on this issue at this time as Murray has no cognizable interest in the issue as he is no longer a bail commissioner. *See Cutaiar v. Marshall,* 590 F.2d 523, 527 (3d Cir.1979).