McKEE, Circuit Judge
concurring in part, and dissenting in part.
I join sections II, III, and IV of the majority opinion, however I disagree with the majority’s conclusion that the District Attorney’s implementation of Pa. R.Crim. P. 544 is constitutional.[1] I therefore dissent from section V of the majority opinion.
I.
Under Pa. R.Crim. P. 544, the Philadelphia District Attorney’s Office has adopted *232 a practice of re-arresting some defendants immediately after a Municipal Court Judge has discharged felony charges at a preliminary hearing. The discharges are based upon the judge’s conclusion that the defendant’s continued detention is not supported by probable cause. The re-arrests do not result from any additional evidence, or changed circumstances. An Assistant District Attorney merely restamps the same criminal complaint that was originally filed. The defendant is then immediately re-arrested on the same charges that have just been dismissed even though a judge has just ruled that the evidence offered in support of the those charges is insufficient to support them.[2] Rule 544 does not require this practice, nor can it legitimize this practice.
II. Applicable Rules of Criminal Procedure.
Under Pa. R.Crim. P. 518(a), a defendant in Philadelphia County who is charged in a complaint with a felony and arrested without á warrant is detained pending a preliminary arraignment. That preliminary arraignment usually occurs within 24 hours of the defendant’s arrest. See Pa. R.Crim. P. 518(a). At the preliminary arraignment a Bail Commissioner, functioning as the “issuing authority,” informs the defendant of his/her rights, including the right to counsel, and appoints counsel if necessary.[3] The defendant is also given a copy of the criminal complaint that has been accepted for filing, Pa. R.Crim. P. 540(a), 520, 523 and unless a defendant who is represented by counsel waives a preliminary hearing, the Bail Commissioner/issuing authority must also set a date for a preliminary hearing before a Philadelphia Municipal Court judge. That date can be “no less than 3 nor more than 10 days after the preliminary arraignment.” Pa. R.Crim. P. 540(e)(1).
If the Commonwealth is able to establish a prima facie case for a felony charge at *233 the ensuing preliminary hearing, the Municipal Court Judge orders the defendant held for trial in the Court of Common Pleas on the felony charge(s). If the* Municipal Court judge dismisses all felony charges due to lack of evidence or lack of prosecution so that only misdemeanor charges remain, the defendant is tried on those misdemeanor charges in Municipal Court. See Pa. R.Crim. P. 543(a), 1001(A). If the Municipal Court Judge at the preliminary hearing concludes that the Commonwealth has not established a prima facie case on any of the charges, the judge must discharge the defendant unless a continuance is granted pursuant to a request “supported by reasonable grounds.” See Pa. R.Crim. P. 542(D).[4]
Under the Rules of Criminal Procedure in effect in Pennsylvania before January 1, 2000, if a Municipal Court judge dismissed criminal charges at the preliminary hearing due to lack of evidence or lack of prosecution, the attorney for the Commonwealth could reinstitute charges by submitting a new criminal complaint and an affidavit of probable cause to a judge of the Court of Common Pleas. See Phila. Crim. R. 500(H). However, a warrant for the defendant’s re-arrest would only issue if the court approved the submission. If the initial dismissal of charges in the Municipal Court was based on a finding of no probable cause, the preliminary hearing following any re-arrest was scheduled before a judge of the Court of Common Pleas. In all cases, however, a re-arrest could proceed only after a judicial officer had approved a resubmission and determined that there was indeed probable cause for the re-arrest.
On January 1, 2000, the current version of Pa. R.Crim. P. 544 (then Pa. R. Crim P. 143) went into effect. The Rule provides:
Reinstituting Charges Following Withdrawal or Dismissal.
(A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the refiling of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.
*234 (B) Following the refiling of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 23 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth reasons for requesting a different issuing authority.
Pa. R.Crim. P. 544. Nothing in the text of that rule requires the defendant’s re-arrest pending completion of the second preliminary hearing. That practice arises from the specific policy at issue here, not from the language of the Rule.
The majority believes that Stewart is asking us “to deprive Pennsylvania of its right to reinitiate a criminal proceeding” following discharge of felony charges at a preliminary hearing. Maj. Op. at 228. The majority concludes that “[tjhere is no precedent of which we are aware, ... for the proposition that the federal Constitution prohibits the reinitiation of a criminal proceeding in such a manner where double jeopardy has not attached and no pattern of prosecutorial harassment has been alleged.” Id. However, that framing of the issue mischaracterizes the relief Stewart is seeking as well as the district court’s order. The district court only enjoined the District Attorney from “ordering the rearrest and detention, without judicial authorization, of any persons on any charge which has been dismissed by a Philadelphia Municipal Court judge at a preliminary hearing because of the failure of the Commonwealth ... to establish probable cause or a prima facie case,” id. at 5, and that is all Stewart is asking us to do.
The injunction does not preclude prosecutions; it precludes unauthorized detentions. It prevents the District Attorney from detaining a defendant pending a second preliminary hearing where a judge has dismissed the felony charges holding a defendant in custody. It also prevents the prosecutor’s assessment of probable cause from outweighing and reversing a judicial determination of probable cause. I do not think a request to do that is all that extraordinary.
Accordingly, the majority’s declaration that “[t]he District Court’s injunction bars the District Attorney from ever reinitiating charges without prior judicial approval, no matter how much additional incriminating information she learns in the course of her investigation,” is simply wrong. See Maj. Op. at 230 (emphasis in original).
Moreover, the District Attorney is not even arguing that enforcing the district court’s injunction has the effect the majority assigns to it; nor could she: In discussions between the District Attorney’s Office, the Defender Association of Philadelphia, and the Philadelphia Municipal Court, the District Attorney initially proposed that prosecutions be reinitiated under Rule 544 by simply refiling charges immediately after the Municipal Court dismissal without re-arresting the defendant. Pursuant to that policy, the refiled case would have received a new date for a preliminary hearing and the defendant would have received a subpoena to appear on that new date. For reasons unknown to us, the Defender Association and the Municipal Court rejected that proposal. Accordingly, since April 17, 2000, the District Attorney has ordered some defendants re-arrested with no additional judicial determination of probable cause under Rule 544. The prosecutor simply refiles identical charges and those defendants are immediately taken into custody to await a new preliminary arraignment on refiled charges that are identical to charges that *235 have just been dismissed by a judge.[5] Dist. Court Op. at 4.
III. The Fourth Amendment Prohibits These Re-Arrests.
The Fourth Amendment attempts to guard against unreasonable restrictions on liberty by requiring that an arrest be supported by probable cause, and that, where possible, a neutral magistrate determine if probable cause exists.[6] Thus, in Katz v. United States, in referring to the threshold showing needed for a search under the Fourth Amendment the Court stated, “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). More than half a century ago, the Supreme Court declared, “[t]o provide the necessary security against unreasonable intrusions upon the private lives of individuals, the framers of the Fourth Amendment required adherence to judicial processes wherever possible.” Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948) (emphasis added), overruled on other grounds by United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
In Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) the Supreme Court addressed the inherent tension between protecting an individual’s liberty on the one hand, and the real world necessities of law enforcement on the other. The Court concluded that the Fourth Amendment resolves that tension by allowing a warrantless arrest under certain, limited circumstances. The resulting compromise achieves the necessary balance between law enforcement and individual liberty because “a policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of a crime, and for a brief period of detention to take the administrative steps incident to arrest.” Gerstein, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54.
The defendants in Gerstein were arrested pursuant to a prosecutor’s information. Under applicable Florida rules and statutes, prosecutors could charge noncapital offenses by information without a preliminary hearing or leave of court. State courts had previously held that the prosecutor’s filing of an information “foreclosed the suspect’s right to a preliminary hearing”. State courts had also held that ha-beas corpus was only available to challenge the probable cause for detention pursuant to an information under “exceptional circumstances.” Id. at 106, 95 S.Ct. 854. “As a result, a person charged by information could be detained for a substantial period solely on the decision of the prosecutor.” Id. On appeal, the Supreme Court framed the issue as follows: “whether a person arrested and held for trial under a prosecutor’s information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty.” Id. at 104, 95 S.Ct. 854. Stated another way, the issue was, “whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention....” Id. at 111, 95 S.Ct. 854.
*236 The Court began its analysis of that question by discussing the aforementioned practical limitations that arise from the practicalities of law enforcement. The Court observed:
Maximum protection of individual rights could be assured by requiring a magistrate’s view of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.
420 U.S. at 113, 95 S.Ct. 854. However, the relaxation of the warrant .requirement is tightly tethered to circumstances that are sufficiently compelling to justify relaxing the protection endemic in review by a neutral magistrate. When such exceptional circumstances exist, “a policeman’s on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest.” Id.
The necessity of allowing a police officer to react as circumstances unfold “on-the-scene” does not, however, minimize the importance of a suspect’s liberty, nor permanently degrade his/her entitlement to having a judicial officer review the resulting arrest to determine if it was, in fact, reasonable. “Once the suspect is in custody, ... [ ] the reasons justifying dispensing with the magistrate’s neutral judgment evaporate_And, while the State’s reasons for taking summary action subside, the suspect’s need for a neutral determination of probable cause increases significantly.” Id. at 114, 95 S.Ct. 854.
The situation here is, of course, a bit different than the situation in Gerstein. Stewart actually received a probable cause hearing before a neutral magistrate. However, therein lies the proverbial “rub.” As set forth above, that neutral magistrate determined that there was no probable cause to justify Stewart’s continued restraint. Yet, despite this judicial determination, and perhaps to spite it, Stewart was immediately re-arrested under Rule 544 based solely upon the prosecutor’s certification and filing. Therefore, although Stewart’s initial arrest may well have been occasioned by an officer’s on-the-scene observations or averments in a complaint, the circumstances after the arrest are not so extraordinary as to allow the prosecutor’s assessment of probable cause to justify rearrest if a neutral magistrate determines that there is no probable cause to support that re-arrest.
Stewart’s case illustrates the constitutional infirmities of the District Attorney’s policy. As noted above, the victim of the charged assault testified at Stewart’s preliminary hearing, and the Commonwealth offered no other evidence to support the charged felony. After hearing that witness testify, the Municipal Court Judge ruled that Stewart could only be held for court on misdemeanor assault, and dismissed the felony of aggravated assault. Inasmuch as judges are not permitted to make credibility determinations at the preliminary hearing stage, it is clear that the Municipal Court Judge hearing the victim’s testimony concluded that the testimony was insufficient as a matter of law to sustain a conviction for aggravated assault even if the testimony were true. See Commonwealth v. McBride, 528 Pa. 153, 595 A.2d 589 (Pa.1991). Yet, even though a judge ruled that the testimony of the victim was not sufficient to hold Stewart on the charge of felonious aggravated assault, Stewart was immediately re-arrested for that very charge, and jailed for at least *237 two more weeks. Stewart was re-arrested (apparently before he could leave the courtroom), and thereafter jailed because he could not post bail a second time.
Nothing on this record establishes any “exigency” to justify that re-arrest. Although my colleagues postulate that the prosecutor’s decision to re-arrest was based upon information gleaned from some sort of secret “database,” it is clear that nothing on this record rises to the level of practical necessity that allows law enforcement officers to act upon on-the-scene judgments they are required to make while patrolling public streets. This is especially true when one considers that a judge has heard all of the evidence the prosecution had to offer and concluded that the Commonwealth could not legally detain Stewart on felony charges. See Gerstein, supra.
I am, of course, aware that Stewart’s detention under Rule 544 was substantially shorter than that which troubled the Supreme Court in Gerstein. I also realize that the second preliminary hearing must be held promptly after re-arrest under Rule 544. See County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). The majority relies upon the 48 hour limit incorporated into Rule 544 to uphold the District Attorney’s argument that she is free to rearrest based only upon the prosecutor’s assessment of probable cause provided that defendants receive a prompt judicial determination of probable cause as required by Gerstein and County of Riverside. See Maj. Op. at 228-29.
The majority concludes that the determination of probable cause made by the “issuing authority” at the preliminary arraignment provides the legal basis for the re-arrest after the preliminary hearing. My colleagues thus accept the District Attorney’s distinction between the standard at the preliminary arraignment and the standard at the preliminary hearing. The majority agrees that dismissal at the preliminary hearing is based on a failure to meet a different, and substantially higher threshold, than that established at a preliminary arraignment. See Maj. Op. at 229 (“The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, and there is no reason to believe that law was not fully complied with here.”) (citing Commonwealth v. Abdul-Salaam, 544 Pa. 514, 678 A.2d 342, 347-48, n. 10 (Pa.1996)). A close examination of the nature of preliminary hearings and preliminary arraignments illustrates the weakness of my colleagues’ analysis.
As noted above, Pa. R.Crim. P. 540 establishes certain procedures that an issuing authority must follow at the preliminary arraignment following a warrantless arrest. It includes a requirement that the issuing authority determine if there is probable cause for the arrest. If probable cause is found, the issuing authority must inform the defendant of the charges filed against him/her, appoint counsel and otherwise explain the right to counsel, set bail (assuming the defendant was arrested for a bailable offense), and inform the defendant of “the right to have a preliminary hearing.” Pa. R.Crim. P. 540(d). The Rule also provides that “[ujnless the preliminary hearing is waived by a defendant who is represented by counsel,” the issuing authority must set a date for a preliminary hearing “which shall not be less than 3 nor more than 10 days after the preliminary arraignment.” Id.
The preliminary arraignment is often held before a defendant is represented by counsel, and the Rule provides the procedure for appointing counsel in such a case, and setting a date for a preliminary hear *238 ing (unless a defendant who is represented by counsel waives it). It is therefore clear from the context of the Rule that the preliminary arraignment is designed to inform the defendant of his/her rights, and provide a mechanism for setting bail, and appointing counsel. The Pennsylvania Superior Court has made this quite clear in the context of Pa. R.Crim. P. 516. In addressing the role of the preliminary arraignment following an arrest pursuant to a warrant under Rule 516, the Pennsylvania Supreme Court has stated:
Rule 516 (formerly Rule 123) of the Pennsylvania Rules of Criminal Procedure requires that a person who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay. The purpose of this requirement is to protect an accused’s right to know the nature and cause of the accusation against him, his right to counsel, and his right to reasonable bail.[7]
Commonwealth v. Perez, 760 A.2d 873, 875 (Pa.Super.2000) (citing Commonwealth v. Duncan, 514 Pa. 395, 403, 525 A.2d 1177, 1181 (1987)) (emphasis added). If the Commonwealth is unable to establish a prima facie case at the preliminary arraignment, the defendant must be discharged. See Pa. R.Crim. P. 542(D).
Rule 516 (formally Rule 123) was enacted in 1995 in response to the Supreme Court’s decision in County of Riverside. There, the Court required a probable cause determination “as soon as is reasonably feasible, but in no event later than 48 hours after arrest.” See Commonwealth v. Abdul-Salaam, 544 Pa. 514, 678 A.2d 342 (Pa.1996) (applying Riverside probable cause determination requirements to Pennsylvania criminal procedure).
The probable cause determination that is the focus of our inquiry is, of course, made during a preliminary hearing. The Pennsylvania Supreme Court has explained the function and importance of the preliminary hearing under the Pennsylvania Rules of Criminal Procedure:
The basic principles of law with respect to the purpose of a preliminary hearing are well established. The preliminary hearing is not a trial. The principal junction of a preliminary hearing is to protect an individual’s right against an unlawful arrest and detention. At this hearing the Commonwealth bears the burden of establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. It is not necessary for the Commonwealth to establish at this stage the accused’s guilt beyond a reasonable doubt. In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense.
Commonwealth v. McBride, 528 Pa. 153, 595 A.2d 589, 591 (Pa.1991) (emphasis added) (citations omitted); see also Commonwealth v. Hetherington, 460 Pa. 17, 331 A.2d 205, 208 (Pa.1975). Thus, under Pennsylvania law, the preliminary hearing *239 is intended to insure that the government can establish sufficient facts to justify further detention. The “probable cause determination” at the preliminary arraignment is merely intended to insure that circumstances justify holding the defendant for the 3 to 10 days it will take for the Commonwealth to present evidence of its prima facie case at the probable cause determination that occurs at the preliminary hearing. My colleagues state the following in discussing the distinction between the preliminary hearing, and preliminary arraignment:
it is not at all clear to us that the “probable cause” standard and the “pri-ma facie case” standard under Pennsylvania law require the Commonwealth to provide the same level of assurance that the subject has committed a crime. The different terms chosen to describe the Commonwealth’s burden at the time of arrest and preliminary arraignment and its burden at the time of the preliminary hearings, suggest to us that prima facie case standard was intended to require different and greater assurance of guilt. “Probable cause,” of course, speaks in terms of a probability while “prima facie case” has been defined by the Pennsylvania Supreme Court as evidence “such that if presented at the trial in court, and accepted as true, the judge would be warranted in letting the trial go to the jury.”
Maj. Op. at 229. Although the majority concludes that the distinction between probable cause and prima facie case “is not at all clear” under the controlling law; Pennsylvania courts have stated that it is clear to them that no distinction exists. As noted above, the evidence that the Commonwealth presents at the preliminary hearing must be “accepted as true,” see Commonwealth v. McBride, 528 Pa. 153, 595 A.2d 589 (Pa.1991), just as the evidence at the preliminary arraignment must be.
Moreover, the Pennsylvania Superior Court has said:
[I]t is clear that the concept of establishing a prima facie case is inextricably tied to a showing of probable cause. That is, for the Commonwealth to establish a prima facie case they need to show probable cause that the accused committed the offense. Therefore, a finding by the magistrate that the Commonwealth did not establish probable cause that the appellant committed the violations for which he was charged is the same as a finding that the Commonwealth did not establish a prima facie case. Thus contrary to appellant’s assertion, there is no legal distinction to the choice of phraseology that the magistrate may have employed in dismissing the charges against him.
Commonwealth v. Sebek, 716 A.2d 1266, 1269 (Pa.Super.1998) (emphasis added). As noted above, in Philadelphia County, the determination at the preliminary hearing is made by a Municipal Court Judge. The determination at the preliminary arraignment is made by a Bail Commissioner. It is the Municipal Court Judge presiding at the preliminary hearing whom Pennsylvania law charges with ensuring that the government is justified in depriving the suspect of his/her liberty. In McBride, the Pennsylvania Supreme Court expressed no difficulty in concluding that: “the sole function [of the judge at a preliminary hearing] is to determine whether probable cause exists to require an accused to stand trial on the charges.... ” 595 A.2d at 592. In Gerstein, the Court noted that “the sole issue” at the probable cause hearing required by the Fourth Amendment “is whether there is probable cause for detaining the arrested person pending further proceedings.... The stan *240 dard is the same as that for arrest. That standard — probable cause to believe the suspect has committed a crime.... ” 420 U.S. at 120, 95 S.Ct. 854. Here, that determination was made at the preliminary hearing by the Municipal Court judge.
The majority bases its conclusion that probable cause is distinct from the prima facie case in Pennsylvania on Commonwealth v. Cartagena, 482 Pa. 6, 393 A.2d 350, 355 (Pa.1978) (plurality opinion) (finding probable cause existed for the institution of criminal proceedings, though a pri-ma facie case had not been established); Commonwealth v. Days, 718 A.2d 797, 800 (Pa.Super.1998) (“[pjrobable cause is based on a finding of probability, not a prima facie showing of criminal activity”); and Commonwealth v. Scott, 279 Pa.Super. 8, 420 A.2d 717, 720 (Pa.Super.1980) (“It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause.”). See Maj. Op. at 230.
In Commonwealth v. Cartagena, the Pennsylvania Supreme Court did state that: “[t]he Pennsylvania courts have recognized that the standard of probable cause and the prima facie case standard are conceptually distinct.” However, the district court carefully considered Cartage-na, and was not persuaded. The district court’s analysis of Cartagena is worth repeating here because it fully and accurately disposes of the District Attorney’s reliance on that case. The district court relied upon McBride in stating the following:
While the District Attorney was unable to articulate any practical distinction between the terms probable cause and pri-ma facie case, she directs us to Commonwealth v. Cartagena, 482 Pa. 6, 393 A.2d 350, 355 (1978), in support of her position. While Cartagena seems to say that prima facie case and probable cause are different concepts under Pennsylvania law, it does not define them or explain the difference. Cart-agena was decided over fifteen years before the institution of the present two-level system whereby a bail commissioner not learned in the law makes a probable cause determination and a Municipal Court judge thereafter makes a prima facie case determination. McBride, which was decided in 1991, has been construed by the Pennsylvania Superior Court to mean that the probable cause and prima facie case determinations are the same.
Stewart v. Abraham, 2000 WL 1022958 *7 (E.D.Pa.2000) (citations omitted). I agree. Moreover, it is important to note that, in Cartagena, unlike here, the District Attorney did not simply refile identical charges and seek to re-arrest a defendant without judicial intervention after a judge ruled that the prosecution did not establish probable cause for the initial charges. Instead:
Appellant was arrested on May 31, 1975. A preliminary hearing was held in the Municipal Court of Philadelphia on June 5, 1975. The court took the matter under advisement and after hearing argument, found that a Prima facie case had not been established. The court ordered appellant discharged on June 13, 1975.
The Commonwealth then drew up another more detailed criminal complaint and another arrest warrant. These documents were presented to a judge of the Court of Common Pleas of Philadelphia who signed the documents on June 16, 1975. Appellant was re-arrested, and following a preliminary hearing before another judge of the Court of Common *241 Pleas of Philadelphia, appellant was held for trial....
393 A.2d at 354. Accordingly, the District Attorney in Cartagena did not substitute his own determination for that of a neutral magistrate as the prosecutor seeks to do here. Moreover, in reaching the decision in Cartagena the Court stated, “[w]hen the magistrate believes that probable cause to hold the defendant has not been proven, he may discharge him; ... If the Commonwealth deems itself aggrieved by his decision it may bring the matter again before any other officer empowered to hold preliminary hearings.” Id. Thus, Cartagena assumes judicial approval for a second arrest following discharge at a preliminary hearing.
The majority’s reliance upon a pronouncement of the Pennsylvania Superior Court in' Commonwealth v. Scott, is also unconvincing. There, the court did state: “[i]t would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of prima facie case when there had not even been a hint of harassment or failure to show probable cause.” 420 A.2d at 720. Indeed, the issue in Scott was the assessment of costs under then applicable Pa. R.Crim. P. 542(d). The Rule allowed costs to be taxed against the government if it did not establish a prima facie case “at the first preliminary hearing.” Id. at 719. It also gave judges the discretion to discharge a defendant if, despite the prior discharge, “further proceedings on the same cause [were brought] without payment” Id. The decision does not establish a distinction between a prima facie case and probable cause, nor does it infer any such distinction. Moreover, it is interesting to note that even there, in 1980, the court used “probable cause” and “prima facie case” interchangeably as though the distinction my colleagues seek to draw did not exist. Id at 720. For example the court noted,
[i]t is especially unlikely that the intent of the Rule as revised was to require the payment of the cost ... prior to any second prosecution because re-arrest and a second preliminary hearing is the only route open to the Commonwealth to test an issuing authority’s judgment that a prima facie case has not been made out. It would be unreasonable to require payment of costs every time the Commonwealth wanted to challenge a finding of lack of a prima facie case when there had not even been a hint of harassment or failure to show probable cause.
420 A.2d at 720.
I am also not persuaded by the majority’s citation to Commonwealth v. Days. There, the defendant was arrested following execution of a search warrant. The search conducted pursuant to that warrant revealed numerous vials of cocaine on her person and in her apartment, and she was convicted for possession of a controlled substance with intent to deliver. On appeal, she challenged the trial court’s conclusion that probable cause existed for the search. In affirming the trial court’s ruling, the Pennsylvania Superior Court did state: “[p]robable cause is based on a finding of probability, not a prima facie showing of criminal activity,” 718 A.2d at 800, as my colleagues note. However, the court then stated: “[t]he duty of this Court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.” Id. Here, of course, the magistrate concluded that probable cause did not exist, and I fail to see how Days supports the proposition that the prosecutor is licensed to ignore *242 that ruling.[8]
Essentially then, we are asked to decide if the Fourth Amendment will tolerate a situation where an individual can be detained solely upon the certification of a prosecutor even though a judicial officer has determined that the prosecutor lacks probable cause for the defendant’s continued detention. That question answers itself. I do not think that any system of ordered liberty based upon respect for a judiciary charged with interpreting neutral legal principles can condone the practice that the District Attorney urges upon us under its application of Rule 544 and which my colleagues have sanctioned.
My colleagues believe that Stewart is asking us “to bar the state from exercising its right to arrest when it believes in good faith that it has probable cause.” See Maj. Op. at 231. I agree that nothing on this record suggests that Stewart’s re-arrest was the result of bad faith. However, the constitutional analysis here does not turn on the good faith of the prosecutor. The issue is more fundamental than that. Even if such re-arrests always result solely from good faith beliefs of the prosecutor in the courtroom, the constitutional equation would still not balance in favor of allowing the prosecutor’s judgment to negate the actions of a judicial officer who has just ruled that there is not a sufficient basis to deprive the defendant of his/her liberty on felony charges.
[A] prosecutor’s responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate.... Probable Cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution.
Gerstein, 420 U.S. at 117-18, 95 S.Ct. 854.
Moreover, the Supreme Court has already rejected the argument that a defendant’s liberty interest can be held captive to the discretion of prosecutors in this manner. In Gerstein, the Court stated: “[although a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment.” 420 U.S. at 117, 95 S.Ct. 854.
It can hardly be otherwise. Anyone experienced in the emotions of criminal trials will realize what real world practicalities suggest. The prosecutor’s motivations in causing a re-arrest under Rule 544 may often, at least in part, result from a sincerely held belief that the defendant “beat the case” or “got over” on the prosecutor. Such feelings may often be based upon little more than the emotions that are inherent in the adversarial process, and/or the prosecutor’s obviously biased conclusions about the strength of his/her case. A system that conditions an individual’s liberty on those motivations can hardly offer the protection that the Fourth Amendment requires; no matter how well-intentioned the prosecutor may be.
Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore *243 divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.
Id. at 118, 95 S.Ct. 854 (citing McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943)). That is why we have neutral magistrates, that is why the Supreme Court restricted the prosecution’s authority to detain absent review of a neutral magistrate, and that is why the district court enjoined the policy that has been implemented under Rule 544 in Philadelphia County.
The requirement that a neutral magistrate evaluate probable cause amounts to precious little if it can be nullified by the prosecutor’s certification that probable cause exists, especially when the certification is made immediately after a judge has ruled to the contrary. A prosecutor’s “official oath [can] not furnish probable cause....” Gerstein, 420 U.S. at 117, 95 S.Ct. 854. The prosecutor is in substantially the same position as a law enforcement officer who believes his/her view of the case to be correct, and his/her cause to be righteous. More than half a century ago, the Court stated
[t]he point of the Fourth Amendment, which is often not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.
Johnson v. United States, 333 U.S. 10, 13-14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).[9] If a defendant can not initially be detained “solely on the decision of a prosecutor,” it would stand the Constitution on its head to allow the prosecutor that power after a judge has ruled that the prosecutor lacks probable cause to detain the defendant, and orders felony charges discharged. Gerstein, 420 U.S. at 106, 95 S.Ct. 854. The fact that a non-law trained Bail Commissioner may have previously held the defendant for court at a time when the defendant may not have been represented by counsel does not change the equation.
In Gerstein the Court determined that the practicalities that justified an initial warrantless arrest could not justify continued detention without a judicial determination of probable cause. Here, the Commonwealth asserts that practicalities justify continued detention for a brief period to allow it to establish the probable cause that it believes exists. However, the focus on practicality of prosecution and the brevity of the detention misses the point. It requires us to minimize both the importance of one’s liberty, and the proper role of the judge in determining the reasonableness of an arrest.
The detention that results in these cases may well be brief when compared to the more lengthy pretrial detentions in Ger-stein. However, we ought not to devalue one’s liberty to the extent of condoning even a brief period of incarceration following a warrantless arrest unless a neutral magistrate concludes that the prosecution has established probable cause. No informed officer of the court can seriously regard this procedural protection as a *244 troublesome legal technicality, and I doubt that any prosecutor who is truly operating in good faith would regard it as such. “The history of liberty has largely been the history of observance of procedural safeguards and the effective administration of criminal justice hardly requires disregard of fair procedures imposed by law.” McNabb v. U.S., 318 U.S. 332, 347, 63 S.Ct. 608, 87 L.Ed. 819 (1943).
Moreover, the brevity of the incarceration that follows re-arrest does not weigh nearly as heavily in the balance under these circumstances as the majority concludes. The Supreme Court has noted that circumstances may make a delay constitutionally unreasonable even if a probable cause hearing occurs within 48 hours of an arrest. While establishing the 48 hour rule for probable cause determinations in County of Riverside, the Court cautioned: 500 U.S. at 56, 111 S.Ct. 1661.[10] The Court then provided examples of such unreasonable delay. It proclaimed: “Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest,....” Id. That is precisely what we have here. Therefore, I believe the majority places far too much reliance on the fact that the preliminary arraignments occur within 48 hours of arrest. See Maj. Op. at 229. (“The Pennsylvania law requiring probable cause for arrests and a preliminary arraignment within 48 hours satisfies all that the Fourth Amendment requires, ... ”).[11]
This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably.
IV. Conclusion
For the reasons outlined above, I must respectfully disagree with the majority opinion insofar as my colleagues conclude that the district court erred in enjoining the District Attorney’s current policy under Rule 544.

. As the majority notes, The Supreme Court of Pennsylvania entered an order reorganizing and renumbering the Pennsylvania Rules of Criminal Procedure on Mach 1, 2000. Like my colleagues, I use the current numbering system throughout this dissent.

. My colleagues suggest that the decision to re-arrest may have been based on additional information that the prosecutor learned from some "database” and that this information may not have been known when the judge discharged the felony charges. See Maj. Op. at 230 ("The database that the Commonwealth may consult in determining whether there is probable cause for a second arrest is different from and more comprehensive than, the database to which consideration is limited at the preliminary hearing.”). It is not at all clear what this data base is, where it came from, or what it contains.
The only thing that is clear about this "database” is that there is no mention of it in the record, and that the prosecutor did not have time to consult any such "database” before Stewart was re-arrested. That rearrest here occurred as soon as the judge dismissed the felony charges. Stewart was apparently arrested in the courtroom, and in front of the judge who had just ruled that there was no probable cause to support his detention on those charges. Moreover, the District Attorney has not even attempted to justify this practice by relying on some unspecified database of additional information that would have supported the dismissed charges if the judge had only known about it.

. In 1984, the Pennsylvania General Assembly created the office of Bail Commissioner for the Philadelphia Municipal Court. See 42 Pa. Cons.Stat. Ann. § 1123(a); see also Murray v. Silberstein, 882 F.2d 61, 62 (3d Cir.1989) (noting creation of Bail Commissioner position by the Pennsylvania legislature). In 1994, former Rule 140 (now Rule 540) of the Pa. R.Crim. P. was amended to require the "issuing authority” at a preliminary arraignment to determine probable cause. Pa. R.Crim. P. 540(c). This amendment to Rule 140 was adopted in response to County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), wherein the Supreme Court held that a probable cause determination must generally be made within 48 hours of arrest. In Philadelphia County, the issuing authority is the bail commissioner.

. The majority notes that the District Attorney suggests that the most common reason defendants are immediately re-arrested at the preliminary hearing is because important witnesses fail to appear thus compromising the Commonwealth’s ability to establish probable cause. See Maj. Op. at 230. However, that was not the case here. The prosecution presented all of the evidence against Stewart it wanted to, and a judge ruled that evidence insufficient to detain him on felony charges.
Inasmuch as Rule 542(D) specifies that a prosecutor may request a continuance "supported by reasonable grounds,” I fail to see why re-arrest and imprisonment rather than requesting a continuance is the favored response to a witnesses failure to appear. Requiring the prosecutor to request a continuance rather than automatically resorting to the expediency of detention places no burden whatsoever on the Commonwealth. It merely requires that the prosecutor offer an explanation for the witnesses failure to appear, and assumes that a judge will evaluate the adequacy of the explanation. This is no more than is required of lawyers in criminal and civil courtrooms all over this country everyday. Prosecutors in Philadelphia County are as able as the lawyers elsewhere, and I fail to see why the Assistant District Attorneys in Philadelphia are not required to request a continuance and offer an explanation for a witnesses failure to appear just like other lawyers are expected to. This would allow a judge to gauge the efforts that were made to produce the witness and also afford an opportunity for the judge to decide if bail should be continued or reduced if the continuance is granted. Under the current practice a defendant can be re-arrested and detained in jail even if the witness did not appear because of some dereliction on the part of the prosecutor.

. It is not clear how the District Attorney decides who will be immediately re-arrested in this manner, and who will not be.

. The Fourteenth Amendment extends the Fourth Amendment's guarantee against unreasonable search or seizure to the states. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

. Rule 516 requires that a defendant who is arrested with a warrant must be afforded a preliminary arraignment “without delay." Pa. R.Crim. P. 516 (emphasis added). Rule 540 then establishes the requirements for all preliminary arraignments.
It can be argued that Rule 516 does not focus on probable cause because it only applies when a defendant has been arrested pursuant to a warrant. Therefore, the neutral magistrate that issued the warrant has already determined probable cause to arrest. However, as I discuss below, Pennsylvania courts have not made that distinction.

. I realize that the Commonwealth is limited to admissible evidence at the preliminary hearing, whereas hearsay may be considered at the preliminary arraignment, and the majority’s assertion that this creates a significant distinction between the prima facie case and the probable cause determination is not without force. However, given the strength of the authorities that suggest a contrary result, I can not agree that this distinction is so significant as to support the distinction the majority seeks to draw between those two proceedings.

. We have previously noted that the competitive atmosphere of litigation will sometimes give rise to mixed motives on the part of an advocate (there, it was the prosecutor) attempting to admit evidence in a criminal trial. In United States v. Sampson, 980 F.2d 883, 886 (3d Cir.1992) we stated, "Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence ... is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character.”

. In a different context, the Supreme Court has declared, "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice [under a Strickland analysis of competency of counsel]. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.” Glover v. United States, 531 U.S. 198, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). (Emphasis added).

. The majority states that Stewart’s arrest would have violated the Fourth Amendment if it had been made without probable cause, but concludes that "Stewart has not attempted to show ... that the district attorney lacked probable cause at the time of his arrest or anyone else’s.” The majority notes that "the record does not reveal ... what information was presented to the neutral magistrate at Stewart's second preliminary arraignment and was found to constitute probable cause.” See Maj. Op. at 229, n. 4.
The record does, however, show that a judge ruled that the Commonwealth did not have probable cause to detain Stewart on the felony charges he was arrested for immediately after the judge made that ruling. Therefore, I believe that the majority's focus on the second preliminar)' arraignment is misplaced. The arrest had already occurred, and there is no dispute that a judge had already ruled that the Commonwealth had not presented the Municipal Court Judge (the relevant "neutral magistrate”) with probable cause to support that arrest.